(No. 15371.—Decree affirmed.)
ELLEN LOUISA HALE ANDREWS, Appellee, *vs.* SAMUEL M. FLOYD *et al.* Appellants.

*Opinion filed June 20, 1923.*

1. LIMITATIONS—*possession must continue hostile for the entire period.* To establish title under the twenty-year Statute of Limitations the possession must not only be continuous for the statutory period, but it must be exclusive and notorious and be acquired and held under claim of title inconsistent with that of the true owner.

2. SAME—*when limitation does not run against co-tenant.* The possession of one tenant in common who collects and appropriates the rents from the entire property, pays the taxes and makes slight improvements on the land is not necessarily inconsistent with recognition of his co-tenant's rights, and before such possession can be adverse to the co-tenant there must be a disseizin or ouster by some overt act of ownership sufficient to notify the co-tenant that an adverse possession is asserted.

3. LACHES—*when laches will not bar partition suit.* Where defendants to a partition suit are unable to make sufficient proof of their possession under the Statute of Limitations to defeat the complainant's rights they will not be permitted to set up the *laches* of the complainant, where nothing is shown by the proof which would make it inequitable to permit the complainant to assert her title.

APPEAL from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding.

E. E. HARDING, and A. REED HAYES, (C. E. MENEMAR, of counsel,) for appellants.

HENRY MANSFIELD, and DAVID J. COWAN, (JOHN BLANCHARD, of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Ellen Louisa Hale Andrews filed her bill for the partition of 160 acres of land in Peoria county. The bill alleged complainant was the owner of the undivided one-half of the land, and that defendants, Samuel M. Floyd, John B. Floyd, Mary Ellen Floyd and Jane Floyd, surviving children of Arietta Steely Floyd, and Emma Floyd McCance, a child of Henry S. Floyd, deceased son of Arietta, owned the other undivided one-half. The bill also asked an accounting for the rents and profits.

The land sought to be partitioned originally belonged to Henry Steely, who resided in Pennsylvania at the time of his death and who also owned land in that State. He died testate in 1838, leaving two daughters, Ellen and Arietta, who each became the owner of the undivided one-half of the land. The Floyds and Emma McCance, on the death of Arietta, in 1894, inherited from her the undivided one-half of the land described in the bill. Ellen Steely married Elias W. Hale, and one child, Henry S. Hale, was born of that marriage. Ellen died in 1853, leaving her husband and only child, Henry S., surviving her. Hale married again, and complainant, Ellen Louisa, is the child of that marriage. Henry S. died intestate in 1889, leaving his father, Elias W., and his half-sister, Ellen Louisa, his only heirs-at-law, who became seized of his undivided one-half of the land as tenants in common with Arietta Steely Floyd, the ancestor of the defendants mentioned. Hale died testate in 1892 and devised his interest in the land to his daughter, complainant. Thereafter the complainant was the owner of the undivided one-half of the land and the children and grandchild of Arietta Floyd of the other undivided one-half as tenants in common.

The answer of defendants averred that after the death of Elias W. Hale, complainant's father, and after she be-

came of age, on July 21, 1893, the parties made a parol partition of all the lands Hale had any right or interest in, in the State of Pennsylvania and Illinois, by which the land in Illinois was assigned and given to defendants in consideration of the laws of Pennsylvania barring the complainant, who was a half-sister of Henry S. Hale, not of the blood of the ancestor, Henry Steely, from inheriting from her half-brother land in that State. The answer avers defendants have ever since maintained the sole, continuous, open, notorious and adverse possession of the land for more than twenty years, have paid all taxes thereon, made lasting and valuable improvements, with the full knowledge of complainant, wherefore defendants claim to be the sole owners of the land described in the bill, and that complainant has no interest in it and is not entitled to partition or an accounting. The defendants also filed a cross-bill setting up substantially the same facts averred in the answer and prayed partition among the defendants.

The case was referred to the master in chancery to take evidence and report his conclusions. The master reported that there had never been any parol partition of the land complainant and defendants were interested in, by which the Illinois land was given to defendants; that the parties had always remained tenants in common of the land, and that while defendants had controlled the Illinois land for twenty years there never had been any ouster of complainant, and she was not barred by the Statute of Limitations from asserting her right in the land. The master recommended a decree in accordance with the prayer of complainant's bill and that the cross-bill be dismissed for want of equity. The court overruled exceptions to the master's report and entered a decree for partition as prayed in the original bill and dismissed the cross-bill. The decree postpones the accounting until a sale of the premises in partition was made. Defendants have appealed from that decree.

308–36

We need not discuss the marriages, births and deaths by which complainant and defendants became owners of the land as tenants in common. It is sufficient to say they were such owners July 21, 1893, when defendants allege a parol partition was made, and the most important question presented is whether that defense was proved. None of the parties have ever resided in Illinois, as we understand the record, and the master found complainant and defendants did not live near each other in Pennsylvania. Defendants claimed, and sought to prove, that at the solicitation of representatives of complainant there was a meeting at Lewistown, Pennsylvania, July 21, 1893, between Wilbur F. Reeder, attorney of record for the estate of Elias W. Hale, deceased, Henry S. Floyd, who was a lawyer, and J. B. Floyd; that the meeting was arranged by G. F. Gerberich, partner of Hale, at which meeting it was agreed between attorneys Reeder and Floyd that the Illinois land was the property of the Floyds. At that time complainant and her mother were executrices of the will of Hale. Complainant denies she authorized anyone to represent her at the meeting and denies she knew of the meeting. At the time the bill was filed in this case Henry S. Floyd was dead, and the only testimony of defendants on the question of the parol partition was that of J. B. Floyd, now seventy-four years old and living in Belleville, Pennsylvania. He testified he was at a meeting concerning the estate of the late Henry Steely, of Lewistown, Pennsylvania; that his brother, Henry S., and Reeder, were there. Henry S. had received a letter regarding the meeting. Defendants offered in evidence a letter from G. F. Gerberich, former partner of Hale, who was a doctor, dated June 28, 1893, addressed to J. B. Floyd. The letter mentioned the writer had received a telephone message from J. B. Floyd, and said Reeder, Hale's attorney, had gone to the World's Fair and would not be home till the following week. He promised to see Reeder, ascertain what time it would suit him to have

a meeting, and would notify Henry S. Floyd. The meeting must have been held July 21. After that meeting, on July 24, Gerberich wrote Grassmeyer, who appears to have been a tenant of some of the Pennsylvania land, directing the tenant to recognize the Floyd heirs as landlords of the farm, except seventy acres joining the Steely land, which had been bought and was owned by Hale, and the tenant was directed what to do with the rents of the Hale land. In view of the inheritance laws of Pennsylvania it would seem quite probable that when, as testified by J. B. Floyd, Reeder said "the property belongs to you people," he was referring to the Pennsylvania land. J. B. Floyd testified his brother, Henry S., did most of the talking and business. Witness testified the property referred to was land his grandfather had owned; that he understood Hale had a life estate in it; that Henry S. Hale had owned the fee at the time of his death. All the witness could remember about what was done at the meeting was that he heard Reeder say to Henry S. Floyd that Dr. Hale (Elias W.) was dead "and the properties belong to you people; I heard no settlement about it; that is all I can tell you." No particular property was specified. Floyd testified the Illinois land was not specifically mentioned. Reeder said "properties," and whether the reference was to the Illinois land or Pennsylvania land, or both, cannot be determined from the witness' testimony. He seems to have concluded that because the Floyds had control and management of the Illinois property for many years subsequent to the meeting the property referred to by Reeder was the Illinois land. The master concluded that even if Reeder had authority to represent complainant at the meeting on July 21, 1893, the testimony was too uncertain, vague and inconclusive to establish parol partition, especially in view of the fact that complainant testified Reeder had no authority to appear for and represent her at the meeting and that she had no knowledge of the meeting. The testimony fails to disclose what,

if anything, complainant was given at said meeting for the surrender of her rights in the Illinois land. As the testimony stands, we agree with the master that the proof falls far short of sustaining defendants' claim of a parol partition.

The twenty-year Statute of Limitations is also set up and relied on by defendants as a bar to the action by complainant. The proof shows that the Floyds had control of the land for more than twenty years before the bill was filed, during which time they collected the rents, paid the taxes and made the improvements that were made on the premises. Henry S. Floyd seems to have been in the active management of the property at the time of his death, in 1899, and thereafter it was managed by J. B. Floyd until the bill was filed. Complainant never was consulted about it, and except once, in 1897, never made any inquiry about what was being done with the land, never asked for any of the rents, and never paid any taxes or other expenses. In 1897 complainant's husband wrote J. B. Floyd an inquiry about the Illinois land. It should be borne in mind that all the parties lived in Pennsylvania. In reply, after speaking of other lands than those in Illinois, Floyd wrote: "As to the Peoria property, I do not claim to have anything to do with it. Do not know anything about it, as it was in charge of H. S. Floyd and Harry Hale. Henry claims to me that Harry and Dr. Hale got their interest up to the time of their deaths. Anyway, this is a separate affair and you will have to write Henry in relation of the matter. In the meantime I will also write him and see what he has to say, yet he has already claimed to me Dr. Hale and Harry got their interest but that he had a claim for services rendered. I do not know anyone wanting to buy at this time. The tract is too far from the market to readily sell. Let me know your price and I will use my best efforts in finding a buyer." Complainant testified her husband looked after her interest in the land after her marriage. She never received any communication from the

Floyds, except the above letter, after the death of her father, which occurred in 1892. Her father paid taxes on the Illinois land. Witness testified it was her understanding the Illinois property was wild land, far from market and not of much value. After receiving the letter from J. B. Floyd in 1897 she made no further inquiry about the land till December, 1920, when she received a letter from someone about her owning an interest in the land and about giving title to it. She then made inquiries and learned the land was valuable. Complainant's husband testified that in writing the letter to J. B. Floyd he was acting for his wife. He knew nothing about the value of the land or its condition except as shown by Floyd's letter. Floyd testified he could not say why he wrote that letter,—that he did not have charge of the property at that time. Henry S. Floyd was then living. The letter can only be understood as recognizing that complainant owned an interest in the land in Illinois, which was represented to be too far from market to be salable. The writer of the letter said, "Let me know your price and I will use my best efforts in finding a buyer." At the time the letter was written the Floyds were in possession of the land by tenants, and, after paying taxes and for improvements, were appropriating to their own use the rents in excess of expenses paid. They so continued to the time the bill was filed. Complainant was never consulted about the land for more than twenty years and never received anything from it.

Defendants contend their continued possession of the land and appropriation of the rents, payment of taxes, building improvements, insuring the improvements as owners, collecting $350 insurance on a house that burned down, and re-building, together with their offer to sell the land, make their title good under the twenty-year Statute of Limitations. To establish title under the twenty-year Limitation law, not only must there be twenty years' continuous possession, but such possession must be hostile in its in-

ception and so continue. It must be exclusive, notorious, and be acquired and held under claim of title inconsistent with that of the true owner. There can be no misunderstanding, in view of the many decisions of this court, as to what is necessary to establish title by adverse possession, and it seems unnecessary to cite the decisions. Here, the fact that defendants have been in the possession of the land for twenty years is not disputed. They were owners as tenants in common with complainant, and the possession by one tenant in common who collects and appropriates the rents, pays the taxes and makes slight improvements on the land is not necessarily inconsistent with recognition of the co-tenant's rights. Before the possession of one tenant in common can be adverse to the co-tenant there must be a disseizin or ouster by some outward act of ownership of an unequivocal character, overt and notorious, and of such nature as to impart information and notice to the co-tenant that an adverse possession and disseizin are intended to be asserted by the tenant in possession. (*Busch* v. *Huston,* 75 Ill. 343; *Donason* v. *Barbcro,* 230 id. 138; *Long* v. *Morrison,* 251 id. 143; *Peabody* v. *Burri,* 255 id. 592; *Stowell* v. *Lynch,* 269 id. 437; *Thomas* v. *Chapin,* 274 id. 95.) Under the rule applied in these decisions, defendants failed to prove essential facts necessary to establish title by adverse possession. The mere fact of their entering into possession is of no value unless they further show that in some way complainant was notified that their taking possession was hostile, adverse, and an actual disseizin was intended to be asserted against her. Nothing of the kind was proved. The acts of the defendants were not different from those proved in many of the cases decided by this court, some of which we have cited, and were held insufficient because possession by one tenant in common who pays taxes and for repairs and improvements and appropriates the rents is not sufficient to apprise the co-tenant he claims to own the entire title, but such possession will be the possession of both

tenants in common. Instead of there having been any disseizin and adverse possession, the letter of J. B. Floyd, written after the Floyds had been in possession several years, recognized complainant's title and lulled her into quiet and inactivity by telling her, substantially, that the land was so far from market as to be unsalable and of little value. The proof was, the land was within two miles of a station where were two grain elevators. Defendants never entered into possession by virtue of a parol partition, for the proof wholly fails to establish a parol partition. It is not shown their entry into possession was in any way hostile to complainant, or that at any time after they entered into possession they in any way or by any act gave complainant notice they were holding the land adversely to her.

In their brief defendants argue complainant was guilty of *laches* and her action should be barred on that ground. What this court said in *Thomas* v. *Chapin, supra,* where both the Statute of Limitations and *laches* were relied on as defense, is pertinent here: "In fixing the period in which rights and claims will be barred by *laches* equity follows the law, and, as a general rule, where the period of limitation is fixed by statute, courts of equity will by analogy adopt the same period. If appellee's rights are not barred by the Statute of Limitations she is not barred by *laches,* unless, in addition to mere delay, there would be something in her conduct or the circumstances that would make it inequitable to permit her to assert her title. (*Compton* v. *Johnson,* 240 Ill. 621; *Stowell* v. *Lynch, supra.*) Nothing of that kind has been shown." That is true in this case. Nothing is shown by the proof which would make it inequitable to permit complainant to assert her title.

The decree of the circuit court is affirmed.

*Decree affirmed.*