563 P.2d 30 (1977)
SOUTHEASTERN COLORADO COOPERATIVE, Plaintiff-Appellee,
v.
Jack EBRIGHT and John Ebright, d/b/a Ebright Farms, Defendants-Appellants.
No. 76-067.
Colorado Court of Appeals, Div. II.
October 28, 1977.
As Modified On Denial of Rehearing February 17, 1977.
*31 Andersen & Gehlhausen, S. Ford Andersen, Lamar, Mosley, Wells, Spence & Dean, James B. Dean, Denver, for plaintiff-appellee.
Johnson, McLachlan & DiCola, George McLachlan, Lamar, for defendants-appellants.
Head, Moye, Carver & Ray, Craig R. Carver, Denver, for Colorado Cooperative Council, amicus curiae.
Greg C. Hatfield, Englewood, David W. Dewey, Wichita, Kan., for Wichita Bank for Cooperatives, amicus curiae.
VAN CISE, Judge.
Plaintiff, Southeastern Colorado Cooperative (Coop), a nonprofit, nonstock, cooperative agricultural marketing association authorized to do business under § 7-56-101 et seq., C.R.S.1973, sued defendants, John and Jack Ebright, for goods sold and delivered. The Ebrights pled a set-off for accrued but unpaid patronage dividends and counterclaimed for the balance due. It was stipulated that any judgment in favor of the Coop would be against both Ebrights and that any set-off or counterclaim would be credited or awarded to both Ebrights against the Coop.
Based on an agreed statement of facts and on copies of the Coop bylaws, the Ebrights' membership certificate, and the Coop's ledger sheet showing the Ebrights' patronage dividend account, all stipulated to be correct, the court entered judgment for the Coop for $1,712.80, the amount agreed to be owing from the Ebrights, plus interest from the date of filing of the complaint. The court denied the set-off and dismissed the counterclaim on the ground that the withheld patronage dividends, amounting to an agreed $4,486.06 at the end of 1974, are not a debt owed by the Coop but are, instead, credits held by the Coop as trustee or agent, payable only upon dissolution or as determined by its board of directors. The Ebrights appeal the court's action on the set-off and counterclaim, and the effect of that on the ultimate judgment. We reverse.
Inasmuch as all of the facts were stipulated and the pertinent documents are before us, we are not bound by the trial court's findings or conclusions and may resolve the issues as a matter of law in this court. Stephenson v. Stephenson, 134 Colo. 96, 299 P.2d 1095; Burks v. Verschuur, 35 Colo.App. 121, 532 P.2d 757.
It was agreed that the Ebrights had been members of the Coop since 1960, that the Coop and the Ebrights have not been doing business with each other since the commencement of this lawsuit on March 26, 1975, and that the Ebrights have treated their membership with the Coop as terminated. It is stipulated, however, that the parties are subject to and governed by the bylaws of the Coop.
Under the bylaws, adopted pursuant to 7-56-111(1), C.R.S.1973, persons who are producers of agricultural products in the area are eligible for membership on the payment of a $5 membership fee, which is *32 not returnable, and the investment of $95 in a "certificate of interest," which investment is repayable on dissolution of the Coop. By Article XII of the bylaws, the Coop is to establish and maintain a revolving capital credit fund in order to acquire and maintain adequate capital to finance its business, and may require investment in this fund by each member, from his patronage dividends or otherwise, within the limits specified in section 1(b) of Article XI of the bylaws, with revolving fund certificates or notices of book entries to be issued to the members to evidence credits in such fund. These capital credits may be repaid in whole or in part if and when, in the judgment of its board of directors, the net balance in the revolving fund exceeds the amount of capital reasonably needed by the association. These items are comparable to what, in for-profit corporations, are designated as capital and as paid-in or capital surplus.
The Ebrights have not asked for payment at this time of the $95 certificate of interest or of any capital credits, which are repayable only as set forth above. Rather, they asked for payment of $4,486.06 in patronage dividends accumulated in their account with the Coop from 1960 through 1974 based on patronage by them in wheat, other grain, merchandise, feed, and petroleum transactions with the Coop. The issue on this appeal is what are the Ebrights' rights with regard to these accumulated patronage dividends.
In view of the stipulation, their rights depend on the applicable provisions in the bylaws. According to Article XI of the bylaws, each member patronizing the Coop is entitled to receive from it that proportion of the "members' net margins" received by the association which that member's patronage bears to the aggregate patronage of all members. "Members' net margins" are determined by deducting from the Coop's gross receipts all of its costs, expenses, and other charges, and the net allocable to business done for nonmembers. The bylaws then provide, in Article XI, concerning "Members' Net Margins":
Section 1. . . . Each . . . member . . .: (a) Shall . . . become entitled to have paid to him such proportion of the Members' Net Margins received by this association as his patronage bears to the aggregate patronage of all members, all as more particularly hereinafter defined and provided; (b) Shall . . . invest in the capital of this association in capital credits as requested by the board of directors all sums of money which represent the member's share of net margins of the agricultural products sold . . . and, in addition, such further sum or sums of money as the board of directors may specify: Provided, however, that his obligation to invest in said capital credits in any fiscal year of this association in addition to the rate prescribed above shall be limited to an amount equal to his share of the Member's Net Margins for the fiscal year next preceding . . .; it being the intention. . . that as the board of directors shall deem the capital of this association to be inadequate, . . . then its several members shall, subject to the foregoing limitations, furnish such additional capital as may be required, and shall do so substantially in proportion to their respective patronage in the preceding fiscal year, except that the member may not be required to furnish capital by reinvesting his net margins in capital credits when he has bought or acquired through reinvestment at least $100.00 in capital credits. It shall be mandatory that the individuals reinvest at least fifty percent (50%) of the previous year's patronage in capital credits. Nothing, however, in this section or in any other section of these bylaws shall prohibit the board of directors from paying in cash up to fifty percent (50%) of the current year's savings, which said fifty percent (50%) shall not be required to be reinvested.
"Section 2. . . . All of the Members' Net Margins shall, as received by the association, belong to and be held by the association for all its members, and shall be distributed to them at the close *33 of each fiscal year on a patronage basis. . ..
"Section 3. . . . Each member's share of the `Members' Net Margins' shall be payable to him in cash at the close of each fiscal year, but the legal offset of the payments due a member against the obligation of such member to subscribe for capital, as provided in Section 1 of this Article XI, shall constitute full and complete discharge of the obligation of the Association to make payment as herein provided."
Each member's share of the "members' net margins" is what is commonly designated as his "patronage dividends." Section 1 of Article V requires that the Coop directors keep proper records of all business transactions. The Ebrights' patronage dividend ledger account, taken from the Coop's books and attached to the parties' stipulation, shows that there have never been any debits from their patronage dividends for any investment in capital credits. As stated in section 1 of Article XI, each member shall invest in capital credits, from the member's share of the net margins and from other sources, sums of money "as requested by" or "as the board of directors may specify" or "as the board of directors shall deem the capital . . . to be inadequate," subject, of course, to the limitations contained in that same section. However, since nothing has been withdrawn from the Ebrights' account for any such investment, there is no basis for limiting the amount of cash to which they are entitled. Therefore, all of the $4,486.06 balance in their account at the close of the 1974 fiscal year was then and is now due and owing.
If, as the Coop contends and the trial court determined, the Ebrights' membership had not terminated, then there is no question but that the claim for the patronage dividends had accrued prior to the commencement of the lawsuit, and the set-off and counterclaim should have been allowed. On the other hand, even if, as contended by the Ebrights, they had effectively terminated their membership on or before the commencement of this lawsuit, they were still entitled to payment at the end of the year 1974 of the dividends credited to their account based on their patronage during the period of their membership. See Bogardus v. Santa Ana Walnut Growers Assoc., 41 Cal.App.2d 939, 108 P.2d 52. Any other result would be in contravention of the nonstock, nonprofit purposes for which the Coop was organized, and would permit the remaining members to retain the use and benefit of the money, not as producers of crops but simply as owners of the association, to the prejudice of the former members who contributed the funds.
Article II, 5 of the bylaws specifies that:
"Upon termination of membership in the association, all rights and interests of such member in the association shall cease and such member shall be entitled only to payment or credit for the equitable appraised value of his property rights and interests in the association, as conclusively determined by the board of directors, which sum shall be paid to him within one (1) year . . .."[1]
However, this provision applies only to the former member's interest in the net assets of the association by reason of membership therein, subject to the payment of all its debts and liabilities, and does not give the Coop the right to retain the money which under the bylaws it is obligated to hold for and distribute to each member at the close of the fiscal year based on his patronage. See Hood River Orchard Co. v. Stone, 97 Or. 158, 191 P.662; Bogardus, supra. By the terms of the bylaws, the patronage dividend funds are in effect money held in trust and are not general assets of the Coop. See Bogardus, supra.
That portion of the judgment denying the set-off and counterclaim is reversed, *34 and the cause is remanded with directions to set aside the entire judgment and enter a new judgment for the Ebrights and against the Coop in the amount of $2,773.26 (the difference between the $4,486.06 patronage dividend account and the $1,712.80 for the goods sold and delivered), plus interest from January 1, 1975, and award the Ebrights their costs.
SILVERSTEIN, C. J., and ENOCH, J., concur.
NOTES
[1] Excluded from this valuation are the $5 membership fee and the amounts allocated to certificates discussed supra.