The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Plaintiff-Appellee,

v.

The NORTH COLORADO SPRINGS LAND AND IMPROVEMENT COMPANY, a Colorado corporation, Defendant-Appellant,

Hiram P. Bennet, also known as Hiram P. Bennett, et al., Defendants.

The NORTH COLORADO SPRINGS LAND AND IMPROVEMENT COMPANY, a Colorado corporation, Plaintiff-Appellant,

v.

CITY OF COLORADO SPRINGS, a Colorado municipal corporation, Defendant-Appellee.

No. 81CA1109.

Colorado Court of Appeals, Div. III.

Sept. 16, 1982.

Rehearing Denied Oct. 14, 1982.

Grant, McHendrie, Haines & Crouse, P.C., Peter J. Crouse, Denver, for plaintiff-appellee.

Edward H. Flitton, III, Colorado Springs, for defendant-appellant and plaintiff-appellant.

Gordon D. Hinds, City Atty., Jackson L. Smith, Asst. City Atty., Colorado Springs, for defendant-appellee.

VAN CISE, Judge.

This action was brought by the Atchison, Topeka and Santa Fe Railway Company (the Santa Fe) pursuant to C.R.C.P. 105 to quiet title to a strip of land approximately 4,000 feet in length and 200 feet wide located in El Paso County, Colorado. Defendant North Colorado Springs Land and Improvement Company (North Colorado) answered and counterclaimed, seeking to quiet title in it to fractional interests in portions of the strip. The interests of all other defendants were eliminated by either default or summary judgment.

Subsequently, North Colorado brought an action against the City of Colorado Springs (the city) for the taking of its ⅘ fractional interest in a portion of the real property across which the city had constructed a road after receiving a quitclaim deed from the Santa Fe. That action was consolidated with the quiet title action.

In a trial to the court on stipulated facts, the court entered judgment for the Santa Fe and dismissed the action against the city, ruling that all of North Colorado's fractional interests had been defeated by adverse possession by the Santa Fe. North Colorado appeals. We reverse.

The center line of the entire strip involved in this action was until 1974 the center line of the Santa Fe railroad tracks running north from Colorado Springs. The first 50 feet on either side of the center line are undisputably owned exclusively by the Santa Fe. The Santa Fe and North Colorado are co-tenants by record title of portions of the strip which lie between 50 and 100 feet on either side of the center line (North Colorado owning an undivided ⅘ interest in a portion and an undivided $^{11}/_{18}$ interest in another portion, with the Santa Fe owning the remaining undivided interests in these portions as well as 100% of the balance of the strip.)

The sole issue at trial and on this appeal is whether North Colorado's admitted record title to fractional interests in the disputed property had been lost as a result of 18 years adverse possession by the co-tenant, the Santa Fe. See § 38–41–101(1), C.R.S.1973.

█ Since the facts were stipulated and the pertinent documents are in the record before us, we are not bound by the trial court's conclusions and may resolve the issues as a matter of law in this court. *Stephenson v. Stephenson,* 134 Colo. 96, 299 P.2d 1095 (1956); *Southeast Colorado Cooperative v. Ebright,* 38 Colo.App. 326, 563 P.2d 30 (1976). "[P]ossession of one co-tenant is possession of all. *Rose v. Roso,* 119 Colo. 473, 204 P.2d 1075 [1949]; *Hed v. Pullara,* 128 Colo. 244, 261 P.2d 509 [1953]. Until an actual ouster of the [co-tenant] had been established by conduct apart from mere use and occupation of the land by [plaintiff], the statute giving rise to a claim of adverse possession did not begin to run." *Fallon v. Davidson,* 137 Colo. 48, 320 P.2d 976 (1958).

█ As stated in *Hed v. Pullara, supra:* " 'An ouster, in the law of tenancy in common, is the wrongful disposition or exclusion by one tenant in common of his cotenant or cotenants from the common property of which they are entitled to possession. . . . There is an ouster if the tenant's entry into exclusive possession of the premises is accompanied by a claim of right, or by acts tantamount thereto, even though with the mistaken belief in

his separate ownership, and the adverse character of the possession is actually known to the other cotenants, or is so open and notorious in its hostility and exclusiveness as to put them on notice, or if it is followed by the tenant's receipt of rents, incomes, and profits, without accounting for any part thereof, or any demand upon him so to do, under circumstances evidencing his intention to claim sole ownership, or by payments of taxes for so long a period as to raise a presumption of ouster, or by sale, assuming to transfer the exclusive right to the property, or if the nature of the property is such as to make exclusive possession of it inconsistent with recognition of a cotenancy and the tenant is in exclusive possession under claim of right.' "

■ The disputed land was and is bare and unimproved. No sidings, side tracks, roads, buildings, or other structures have been erected thereon. It has yielded no income other than nominal amounts for utility easements and crossing agreements. The Santa Fe fenced off the entire 200 foot strip as early as 1916, and the fences have remained on one side until recently. The fence was removed in 1954 or 1955 on the west side because of the construction of a highway. Fencing was, of course, incidental to the operation of the railroad and, in fact, was required as a barrier for the protection of stock. See § 40–27–102, C.R.S. 1973, and predecessor statute. There is no indication that the fencing was intended to mark a boundary or to fence out any co-owner, and, therefore, the existence of this fencing does not support adverse possession. *Archuleta v. Rose,* 136 Colo. 211, 315 P.2d 201 (1957).

Santa Fe claims that certain letters and a contract agreement entered into by it and North Colorado in 1935 granting North Colorado a private crossing over the Santa Fe's right-of-way and tracks and, in the process, over a portion of the disputed property, established that it had the "required hostile intent" to claim the subject property as its own. The documents do not establish such intent.

The purpose of the 1935 transaction was to provide a crossing over the tracks so that purchasers of land from North Colorado on the other side of the tracks would have access to the highway. All of the documents dealt primarily with arrangements for gates and for the construction and maintenance of the crossing over the tracks. There was no warranty of title. North Colorado's initial inquiry contained the statement: "As you know, the North Colorado Springs Land & Improvement Company owns considerable acreage of ground on both sides of your track north of Colorado Springs." No reference was made in any of the documents to a claim of 100% ownership by the Santa Fe.

■ In the period since 1935, the Santa Fe executed nine written easements, leases, or licenses to different public and private entities for limited use and occupation of portions of the disputed and other property for nominal fees. However, none of these nine documents contained any warranty of title. Furthermore, in most of them the Santa Fe disclaimed liability in case of the grantee's eviction by anyone else "owning or claiming title to the whole or any part of the licensed premises."

■ The Santa Fe paid all of the taxes on the subject property for many years. However, that fact does not indicate a claim of sole ownership, especially in view of its use and possession of the property rent-free. *Andrews v. Floyd,* 308 Ill. 559, 139 N.E. 883 (1923); *Sperry v. Tolley,* 114 Utah 303, 199 P.2d 542 (1948); *Clarke v. Dorsey,* 242 Ky. 199, 45 S.W.2d 1054 (1932). Only in 1976, when the Santa Fe represented to the assessor that it should be assessed for all the property, was there a claim of sole ownership that might be considered evidence of ouster. Even the 1978 sale to the city was not an unqualified representation of 100% ownership in the Santa Fe when it required, as a condition of sale, that the city accept a quitclaim deed.

On these facts, we are unable to conclude that there was an ouster, that the possession was adverse in fact, or that the Santa Fe had the requisite hostile intent.

The judgments are reversed. The cause is remanded (1) for entry of judgment quieting title in North Colorado to the undivided interests in the portions of the property to which it has record title, and quieting title in the Santa Fe to the other undivided interests in the disputed property and in the balance of the 200 foot wide strip of land, and (2) for further proceedings on the claim against the city for North Colorado's interest in the property purchased by the city from the Santa Fe.

STERNBERG and KIRSHBAUM, JJ., concur.