In re Allyn E. AXVIG, Debtor.

Richard NELSON, Trustee of the Estate of Allyn E. Axvig, Plaintiff,

v.

CAVALIER RURAL ELECTRIC CO–OPERATIVE OF LANGDON, ND, a North Dakota Cooperative, Fairdale Farmer's Union Oil Co., a North Dakota Cooperative, Fairdale Farmer's Union Elevator, a North Dakota Cooperative, Edinburg Farmer's Union Oil Co., a North Dakota Cooperative, Hensel Farmer's Union Elevator, a North Dakota Cooperative, Park River Farmer's Union Oil Co., a North Dakota Cooperative, Osnabrock Farmer's Union Elevator, a North Dakota Cooperative, Grygla Farmer's Union Oil Co., a Minnesota Cooperative, Roseau Electric Cooperative, Inc., a Minnesota Cooperative, Harvest States Cooperative, f/k/a Grain Terminal Association (GTA), Roseau County Cooperative, a Minnesota Cooperative, Defendants.

Bankruptcy No. 83–05036.
Adv. No. 86–7045.

United States Bankruptcy Court,
D. North Dakota.

Jan. 14, 1987.

Lowell P. Bottrell, Fargo, N.D., for plaintiff.

Jon C. Stevenson, Grafton, N.D., for defendant Osnabrock Farmer's Union Elevator.

Kirk Tingum, Grand Forks, N.D., for Grygla Farmers Union Oil Co., Fairdale Farmers Co-op. Elevator, Park River Farmers Union Oil, Edinburg Farmers Union Oil Co., Fairdale Farmers Union Oil Co.

Jan M. Sebby, Minot, N.D., for Harvest States Co-op.

R. Scott Stewart, Langdon, N.D., for Cavalier Rural Elec. Co-op. of Langdon.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The matter before the court is essentially a turnover action commenced by Richard

Nelson (Trustee), as Trustee of the Chapter 7 estate of Allyn Axvig (Debtor), against various electrical, agriculture supply, and agricultural marketing cooperatives. The Trustee by Complaint filed April 4, 1986, seeks a judgment compelling the cooperatives to immediately pay the Trustee the value of equity credits (also referred to as patronage dividends and capital stock) listed in the Debtor's name. The Trustee further alleges that the credits are assets of the estate and not subject to any possessory lien or right of setoff.

Defendants Fairdale Farmer's Cooperative Elevator Company and Fairdale Farmer's Union Oil Co., (Fairdale Cooperatives) both of whom were owed money by the Debtor as of the date of filing, generally deny the Trustee's allegation insofar as the Trustee alleges that redemption of the equity credits should occur immediately. Additionally, as an affirmative defense, the Fairdale Cooperatives allege that they have a first lien on the equity credits of Allyn Axvig and are thus secured creditors. As an alternative counterclaim, the Fairdale Cooperatives seek relief from stay to setoff the Debtor's obligations against the Debtor's equity credits in the cooperatives. Defendants Grygla Farmer's Union Oil Co., Osnabrock Farmer's Union Elevator, Park River Farmer's Union Oil Co., Edinburg Farmer's Union Oil Co., Harvest States Cooperatives and Cavalier Rural Electric Co-op all deny that they are required to immediately redeem the Debtor's equity credits. Defendant Hensel Farmer's Union Elevator did not appear and a default judgment was entered against them on November 4, 1986. The Trustee and Roseau County Cooperative stipulated to a dismissal and a judgment was entered accordingly on November 20, 1986. The remaining defendants and the Trustee agree to submit this case to the court based upon stipulated facts and documents of record, and waive any right to present additional evidence. Oral arguments were held on December 29, 1986. The facts, based upon the stipulated facts and documents are as follows:

*Findings of Fact*

The defendants are all non-profit cooperatives, engaged in providing various services and products such as electricity, agriculture related services and supplies, and marketing of agriculture commodities. Harvest States Cooperative, Grygla Farmer's Union Oil Co., and Roseau Electric Cooperative Inc. are Minnesota cooperatives; the rest are North Dakota cooperatives. The Debtor has previously done business with all of the defendant cooperatives. Although the individual cooperatives do not characterize their operations in precisely the same terms, their design and operation is quite similar and for the most part they operate in the same fashion.

Cooperatives receive special tax treatments because of their non-profit nature. To retain this treatment, profits must be returned to the cooperative patrons. This is generally done on an annual basis. These profits are allocated on a pro-rata basis based upon the amount of business done with the respective cooperative by individual patrons. A percentage of the annual profits, oftentimes in the range of twenty to thirty percent, is paid out in cash shortly after the profit distribution is calculated. A patron's share of profits not distributed by direct cash payments is often referred to as equity credits, stock credits, capital credits, retained capital, or patronage earnings. The court will refer to these retained earnings as "capital stock". These earnings are retained by the cooperative as operating capital and are generally redeemed or retired in cash upon the patron reaching a specific age or at death. Capital stock does not earn dividends or accrue interest.

Bylaws generally give the cooperative board of directors authority to establish criteria which must be met before capital stock will be redeemed although some cooperative bylaws include these criteria. The board of directors of each cooperative in the case at bar is given the discretion in its bylaws to allow redemption of the capital stock *only if the board feels that redemption is feasible and is in the best*

*interest of the cooperative.* Cooperatives will often forego redemption of capital stock until a later occasion if the cooperative's financial condition does not warrant immediate payment. It is the capital stock of the Debtor in various cooperatives which the Trustee is seeking to have immediately redeemed or retired by the cooperatives.

The Debtor, Allyn Axvig, is currently 49 years of age. The Debtor has not exempted any of the capital stock in issue. The facts as they specifically pertain to each individual defendant, are as follows:

### Cavalier Rural Electric Cooperative of Langdon

This cooperative refers to equity credits as capital credits. Article VII of this cooperative's bylaws provides as follows:

> The cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses. The books and records of the Cooperative shall be set up and kept in such a manner that at the end of each fiscal year the amount of capital, if any, so furnished by each patron is clearly reflected and credited in an appropriate record to the capital account of each patron....
>
> All such amounts credited to the capital account of any patron shall have the same status as though they had been paid to the patron in cash in pursuance of legal obligation to do so and the patron had then furnished the Cooperative corresponding amounts for capital.

Capital credits are redeemed from deceased members and capital credits accumulated through the year 1962 have been redeemed. Currently, however, only the capital credits of decedents are redeemed, except for redemption of the capital credits of a corporation which recently filed Chapter 7. Capital credits are assignable only on the books of the cooperative pursuant to written instruction from the assignor and only to successors in interest or successors in occupancy on the patrons premises served by the cooperative, unless the board, acting under policies of general application, shall determine otherwise. Allyn

Axvig's capital account reflects an amount through 1985 of $2,600.43. Axvig is not indebted to this cooperative.

### Osnabrock Farmer's Elevator

This cooperative refers to equity credits as revolving capital credits. Article V, section 1(b) of this cooperative's bylaws provides as follows:

> [Each patron] [s]hall ... irrevocably subscribe and offer to pay to this cooperative an amount of money equal to the amount of his proportionate share of the Patrons' Net Proceeds for credits in the Revolving Capital ... and his said subscriptions shall become payable by him in cash without any notice or call for payment upon acceptance of all or any part of his said subscriptions by the Board of Directors at any time during the next succeeding fiscal year.

The board of directors, in its discretion, may retire any revolving capital credits at any time when the record holder either: (1) dies, (2) otherwise ceases to be a producer, (3) removes from the territory served by this cooperative, or (4) attains the age of 70 years of age. During the past several years the cooperative has paid cash in retirement of its capital credits only to patrons who have qualified by reason of death. However, revolving capital credits have been released and paid to the respective patrons through fifty percent of the 1974 credits. Axvig's revolving capital credits are freely transferable and assignable to either member or non-members of the cooperative. Axvig has accumulated $155.48 in retained credits with this cooperative. Axvig is not indebted to this cooperative.

### Harvest States Cooperative

This cooperative officially calls its equity credits capital equity certificates, referred to as "equities". The bylaws of this cooperative provide that annual net savings per member patronage, referred to as patronage dividends, "shall be distributed in ... Capital Equity Certificates...."

The bylaws further provide that a patron "shall be deemed to have received the amount of such patronage refund and re-invested the same in the capital securities, or credits in a patron's refund account, or in any combination thereof.... The books and records of this Association shall show the interest of each such patron, which shall be credited on this Association's books to the respective patron according to his respective contributions."

The policy of this cooperative is to retire for cash, equities issued to patrons who are deceased, who reach the age of 72 and who no longer own and operate farm property, or who no longer farm or no longer derive any income from a business or profession in the area serviced by the cooperative. During the seven fiscal years ended May 31, 1986, Harvest States has paid cash in retirement of accrued equities to approximately 3,600 producers per year under the above-mentioned criteria. During this time, Harvest States' Board of Directors allowed cash payments on accrued equities to two individuals who establish cases of financial hardships related to physical illness or disability. Axvig is listed as the owner of $4,109.57 of equity credits in Harvest States, which did not arise from his direct patronage with Harvest States, but arose from Fairdale Farmer's Cooperative Elevator's business with Harvest States. These equities were owned by Defendant Fairdale Farmer's Cooperative Elevator and assigned to Axvig. These equities are transferable and assignable to either member or non-members of Harvest States, with approval of the board of directors. Axvig is not indebted to Harvest States.

### Fairdale Farmer's Cooperative Elevator Company

This cooperative's bylaws provide that annual savings "shall be distributed annually in cash or in the form of certificates of interest, or revolving fund certificates, or notes, or in the form of credits in a patronage credit account set up on the books of the Association (or any combination thereof)." Regardless of this cooperative's characterization of the retained equities, they are used as revolving capital for the corporation and are subject to redemption only upon approval by the board of directors, in their sole discretion.

The board of directors have a policy that payment of retained credits cannot be considered until either: (1) the patron reaches the age of 75, (2) the patron dies, or (3) the patron sells farmland and retires such that there is no possibility of his doing further business with the cooperative. Axvig has accumulated $9,318.35 in local retained equity credits with this cooperative. Axvig is indebted to this cooperative in the amount of $17,501.96. The cooperative has not filed a financing statement, but relies upon Article VIII of its Articles of Association on file with the Secretary of State's office for the State of North Dakota, in alleging a security interest in the equity credits. Article VIII provides as follows:

This association shall have a first lien on all certificates of interest, patronage capital, and other interests standing on its books for all indebtedness of the respective holders or owners thereof to the association.

### Farmer's Union Oil Company of Park River

Article VI, Section 6(a)(2) of the bylaws of this cooperative provide that:

Patronage dividends shall be distributed in cash or in written notices of allocation or by any combination thereof designated by the Board of Directors. The amount stated in written notices of allocation shall be applied toward the purchase of capital stock of the corporation....

Capital stock is currently being retired only upon a patron dying or reaching the age of 75. Axvig has accumulated $266.96 in capital stock at this cooperative. Axvig is not indebted to this cooperative.

### Farmer's Union Oil Company of Grygla

Article VI, Section 6(a)(2) of this cooperative provide that patronage dividends or earnings:

Shall be distributed in cash or in written notices of allocation or by any combina-

tion thereof designated by the board of directors. The amount stated in written notices of allocation shall be applied toward the purchase of capital stock of the corporation....

The board of directors of this cooperative has adopted a policy requiring that payment of capital stock be considered only upon the patron reaching the age of 76 or the patron dying. Axvig has accumulated $356.96 in capital stock with this cooperative. Axvig does not have any outstanding obligations with this cooperative.

### Farmer's Union Oil Company of Edinburg

Article VI, Section 5 of the bylaws of this cooperative provides as follows:

All of the annual savings ... shall be distributed annually to the patrons of the association on the basis of their respective patronage.... Patronage refunds shall constitute a contribution to the capital of the association and shall be distributed in the capital stock of the association....

The board of directors of this cooperative has a policy requiring that payment for retirement of capital stock be considered only upon (1) the patron reaching the age of 75 or (2) death of the patron. Axvig has accumulated $97.64 in retained equity credits with this cooperative. Axvig does not have any outstanding obligations with this cooperative.

### Farmer's Union Oil Company of Fairdale

Article VI, Section 5 of the bylaws of this cooperative provides as follows:

All of the annual savings ... shall be distributed annually to the patrons of the association on the basis of their respective patronage.... Patronage refunds shall constitute a contribution to the capital of the association and shall be distributed in the capital stock of the association....

The board of directors of this cooperative has adopted a policy which requires that retirement of capital stock be considered only upon: (1) death of a patron, (2) the

patron no longer living in the area, or (3) the patron no longer doing business with the cooperative. Axvig has accumulated $339.26 in capital stock with this cooperative and is indebted to this cooperative in the amount of $6,771.54. A credit agreement signed by the Debtor on April 6, 1980 provides as follows:

That Seller under its Articles of Incorporation and Bylaws, has a first lien on its capital stock or equities owned by the Buyer for any debt due to Seller by Buyer.

The record does not indicate that a financing statement has been filed by this cooperative evidencing its asserted security interest.

### Conclusions of Law

A Chapter 7 bankruptcy estate is comprised of all legal or equitable interests of a debtor in property as of the commencement of a case. 11 U.S.C. § 541(a). The parties do not dispute that Axvig's capital stock in the various cooperatives became property of the estate. However, they strongly disagree as to the Trustee's ability to legally reduce this stock to cash for distribution to unsecured creditors.

■ The legal relationship between a cooperative association and its member/patrons is governed by state law and a cooperative's articles of incorporation and bylaws. *Evanenko v. Farmer's Union Elevator*, 191 N.W.2d 258, 260 (N.D.1971). *See also* N.D.Cent.Code, Chapter 10–15; Minnesota Statutes Annotated, Chapter 308. The Trustee's interest in the capital stock of the cooperatives is governed by state law and the articles of incorporation and bylaws of the cooperatives as the Trustee obtains no greater rights in property than that which the Debtor had as of the date of filing. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). As the Supreme Court stated in *Butner:*

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be

916

analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy". (citation omitted).

*Id.*

Pursuant to the bylaws and board of director policies of the defendant cooperatives, none of Axvig's capital stock in the respective cooperatives would appear to have qualified for redemption or retirement on the day of the bankruptcy filing. The Trustee alleges, however, that once Axvig filed bankruptcy, he "de facto" died. Because all defendant cooperatives retire or redeem capital stock upon the death of a patron, subject to the financial condition of the cooperatives as determined by the board of directors, the Trustee asserts that Axvig's stock should immediately be redeemed or retired.

The Eighth Circuit Court of Appeals, in *In re Great Plains Royalty Corporation*, 471 F.2d 1261 (8th Cir.1973), addressed the issue of whether a corporation in Chapter 7 has effectively died within the meaning of a cooperative's bylaws, thus requiring the cooperative to retire or redeem capital stock as if the corporation were a deceased individual patron. The *Great Plains* court held that a Chapter 7 corporation's estate is entitled to the same treatment as that given to the estate of an individual patron who dies and that the bylaw provisions for retirement of capital stock apply to the Trustee of the bankrupt corporation. *Id.* However, in dicta the Eighth Circuit stated that the status of a Chapter 7 individual debtor's capital stock is different than that of a Chapter 7 corporation debtor. The court stated that:

The cooperatives, however, argue that a bankrupt corporation occupies a status no different from that of an individual bankrupt, who, under the questioned bylaw provision would not qualify for an acceleration of his capital credits. This comparison is not apt. *For an individual bankrupt continues to live and therefore may continue his patronage. But here, as the Referee observed, the bankruptcy corporation is unlikely ever to "come back to 'life' in the sense of again doing business."*

*Id.*, at 1265 (emphasis added).

Although the *Great Plains* language is dicta, and not controlling upon this court, the Eighth Circuit is of the opinion that a clear distinction exists between an individual and a corporate "patron" of a cooperative. This court believes that the distinction raised by the Eighth Circuit is appropriate, and that the capital stock of individuals in bankruptcy should be treated differently than the capital stock of corporations in bankruptcy. That a distinction should be made is quite logical. If a Chapter 7 corporation is not considered to be dead for stock redemption purposes once a petition has been filed, when would the logical point of "death" for redemption purposes occur? It seems more appropriate to determine that the death of a corporation is upon the filing of a Chapter 7 petition, than to pick some fictitious later date as the time when the corporation would be considered to have died. If a corporation is not considered dead as of the date of filing a Chapter 7 petition, and if some speculative future date is not chosen as the date when the corporation would be deemed to have died, then a corporation would exist in perpetuity. Thus, the corporation's capital stock would never be redeemed and would remain within the capital account of the cooperative forever. This may be prejudicial to unsecured creditors of the corporation. Conversely, an individual Chapter 7 debtor continues physical existence and in the eyes of a lay person is the same person as he was pre-petition. When this individual meets a cooperative's age, physical death, or other criteria for stock redemption, subject to the board of directors' discretion, then the Trustee, if the debtor's estate is still open and if the capital stock has not been abandoned, would be entitled to the distribution. Meanwhile, the "happenstance" of bankruptcy is an insufficient

reason to compel cooperatives to redeem or retire capital stock in advance of a cooperative's normal schedule for capital stock redemption. *In re Schauer,* 62 B.R. 526, 531 (Bankr.D.Minn.1986); *In re Cosner,* 3 B.R. 445, 449 (Bankr.D.Or.1980).[1] However, the Debtor's capital stock in the cooperatives is still property of the estate and as such is in the control and ownership of the Trustee. *In re Schauer,* 62 B.R., at 532.

Although bankruptcy and state laws clearly support this court's position, equity also favors the cooperatives and other patrons. In view of the economic turmoil affecting rural businesses and the farming community, an agriculture cooperative may well be deluged with requests by Chapter 7 trustees for immediate payment of capital stock. Although cooperatives would still have the discretion to deny payment for redemption if it would threaten or impair a cooperative's financial position, other patrons may be delayed in their efforts to receive redemption monies because of the "unordered" redemption of capital stock to one in an "inferior" priority position. Accordingly, the Trustee is not entitled to turnover of cash in lieu of the capital stock which the Debtor's estate holds in the defendant cooperatives.

By holding against the Trustee in his efforts to compel immediate stock redemption, the legal issues as regarding all cooperatives except Fairdale Farmer's Cooperative Elevator Company (Fairdale Elevator) and Farmer's Union Oil Company of Fairdale (Fairdale Oil Company) are resolved. However, interesting legal questions still remain as to the Fairdale Cooperatives because the Debtor is indebted to them for services, supplies and commodities obtained from them.

The Fairdale Cooperatives, in their answers, allege as an affirmative defense that they have a security interest in the Debtor's capital stock to secure the Debtor's indebtedness to them. The Fairdale Elevator purports to hold a security interest in the Debtor's stock on the basis of its bylaws which so provide. North Dakota law provides that a security interest is enforceable against a debtor or third party with respect to the collateral if the following requirements are met:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement that contains a description of the collateral, and, in addition, if the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned.

(b) Value has been given.

(c) The debtor has rights in the collateral.

N.D.Cent.Code § 41–09–16 (U.C.C. § 9–203).

There is no evidence before the court of the Debtor signing a security agreement. Thus, the only alternative for Fairdale Elevator to meet the requirements of section (a) is for the elevator to have possession of the collateral.

The capital stock of the Debtor in the Fairdale Elevator is reflected on the books of the cooperative. There is no suggestion that the capital stock is reflected by actual tangible stock certificates. State law defines a general intangible as "any personal property ... other than goods, accounts, chattel paper, documents, instruments, and money". N.D.Cent.Code § 41–09–06 (U.C.C. § 9–106). A members' capital reserve account or capital stock in a cooperative is in the nature of a general intangible. *In re Cosner,* 3 B.R., at 448. As such, in the absence of a stock certificate evidencing the stock, capital stock is not capable of

---

**1.** The court is aware of *Southeastern Colorado Co-op v. Ebright,* 38 Colo.App. 326, 563 P.2d 30 (1977) where the court allowed setoff of a patronage dividend account against a debtor's debt owed the cooperative. However, *Ebright* is inapposite to the case at bar because the cooperative did not exercise its *discretion* under the bylaws to transfer funds from the patronage dividend ledger to the capital ledger; thus, the cooperative's obligation to the debtor was properly due and owing. All defendant cooperatives in the case at bar have bylaw requirements that patronage earnings either be paid in cash or returned to capital, and the option does not exist for the earnings to perpetually sit in an earnings account that is due and payable.

being reduced to possession. *Id.; In re Sanelco,* U.C.C.Rep.Serv. 65, 70 (D.C.M.D. Fla.Ref.1969). *See also Superior Financial Corp. v. Haskell,* 35 U.C.C.Rep.Serv. 996, 998–99, 556 F.Supp. 199, 200–01 (S.D. N.Y.1983). Accordingly, the Fairdale Elevator does not have possession of the Debtor's stock and as contemplated by the Uniform Commercial Code, has not met the alternative requirement of section 41–09–16(1)(a). Thus, its alleged security interest in the Debtor's capital stock has not attached and is not effective.

■ The same rationale, concerning attachment of a security interest by possession, also applies to the Fairdale Oil Company. Thus, their alleged security interest has also not attached under the possession alternative to attachment, in spite of language in the oil company's bylaws which purports to give the oil company a security interest in the capital stock of the Debtor. However, Fairdale Oil Company has a credit agreement signed by the Debtor. Paragraph 4 of this agreement provides as follows:

> That Seller under its Articles of Incorporation and Bylaws, has a first lien on its capital stock or equities owned by Buyer for any debt due to Seller by Buyer.

State law controls in determining the extent and validity of a security interest. *See Butner v. United States,* 440 U.S., at 55, 99 S.Ct., at 918; *Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984); *In re Fluge,* 57 B.R. 451, 454 (Bankr.D.N. D.1985). In North Dakota, no specific words or form are required to evidence a security agreement. *Elhard v. Prairie Distributors, Inc.,* 366 N.W.2d 465, 468 (N.D.1985). In support of its position, the North Dakota Supreme Court quoted the following language:

> "[A]ll that the agreement need do is indicate that the creditor has a security interest in particular property which happens to be personal property or fixtures. When this much is established, Article 9 of the Code comes into operation without any further statement by the parties".

*Id.,* citing 4 R. Anderson, Uniform Commercial Code § 9–203:7 (2nd Ed.1971).

In view of the North Dakota Supreme Court's position as expressed in *Elhard,* this court believes that paragraph 4 of the Fairdale Farmer's Union Credit Agreement is minimally sufficient to constitute a security agreement pursuant to section 41–09–16(1)(a) (U.C.C. § 9–203) of the North Dakota Century Code. Likewise, the court finds that the other two requirements for a security interest to attach have also been met.

■ Although the Fairdale Oil Company's security interest did attach, it has apparently not been perfected. Perfection of a general intangible such as the Debtor's capital stock can only occur by filing a financing statement with the Secretary of State. N.D.Cent.Code § 41–09–23 (U.C.C. § 9–302) and § 41–09–40 (U.C.C. § 9–401). The record is devoid of an indication that a financing statement has been filed. Thus, perfection has not been accomplished and the Fairdale Oil Company's security interest is avoided pursuant to the Trustee's "strong arm" powers as a hypothetical judgment creditor as of the date of filing as provided by section 544(a) of the Bankruptcy Code.

■ The Fairdale Cooperatives also counterclaim for setoff of the Debtor's stock in the cooperatives against the Debtor's indebtedness owed to them. The Fairdale Cooperatives argue that if the court holds that the capital stock is presently due and owing, that the capital stock should be offset by the Debtor's obligations to them, pursuant to section 553 of the Bankruptcy Code. Because the court has held that the capital stock is not immediately redeemable or due and payable, setoff pursuant to section 553 is not appropriate.

Section 553 of the Bankruptcy Code allows setoff of mutual obligations. Mutuality of debt, although not defined by the Bankruptcy Code, has been defined by bankruptcy courts as requiring something to be owed by both sides. *In re V.N. DePrizio Const. Co.,* 52 B.R. 283, 287 (Bankr.N.D.Ill.1985); *In re Morristown*

*Lincoln-Mercury, Inc.*, 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984). The Eighth Circuit has held that the essential elements of set-off are (1) existence of two debts and (2) creditor's debt must be owed to the estate of the debtor and the estate's debt must be owed to the creditor. *McDaniel Nat. Bank v. Bridwell,* 74 F.2d 331, 332 (8th Cir.1934). Under North Dakota law, capital stock or equity credits "constitute an interest of the patron in the cooperative which is contingent and not immediately payable. This interest becomes vested only when the board of directors, in the exercise of its sound discretion, determines that such payments can be made in cash without causing undue financial hardship to the cooperative". *Evanenko v. Farmer's Union Elevator,* 191 N.W.2d, at 261. The capital stock in the case at bar, because it does not represent a debt and because it is not due and owing, is thus not subject to setoff. *In re Cosner,* 3 B.R. 445, 449 (Bankr.D.Or.1980); *Forrest County Cooperative Assn. (A.A.L.) v. Manis,* 235 So.2d 925, 926 (Miss.1970); *Clarke County Cooperative (A.A.L.) v. Read,* 243 Miss. 879, 139 So.2d 639, 641 (1962). Neither Fairdale Farmer's Union Oil Company or Fairdale Farmer's Union Elevator have a right to setoff pursuant to section 553 of the Bankruptcy Code.

Accordingly, and for the reasons stated herein, IT IS ORDERED that the judgment be awarded as follows:

(1) The Trustee has acquired ownership of all of the Debtor's shares of "capital stock" in the defendant cooperatives free and clear of any liens or security interest in an amount and to the extent of the Debtor's interest as of May 2, 1984, the date of conversion.

(2) To the extent that the Trustee's Complaint seeks monetary judgment by virtue of retirement or redemption of the Debtor's capital stock in the various cooperatives, in advance of the cooperatives' normal redemption or retirement schedule, the Trustee's case is dismissed.

(3) The counterclaims of Fairdale Farmer's Union Oil Company and Fairdale Farmer's Union Elevator Cooperative for setoff are dismissed.

LET JUDGMENT BE ENTERED ACCORDINGLY.