In re Stanley NASH and Gerri
Nash, Debtors.

Paul I. KROHN, Trustee of Stanley
and Gerri Nash, Plaintiff,

v.

OMNI–VETERINARY SUPPLY CO.,
INC., Gerri Nash, Michael Mullady,
Robert Castagna and Anthony Paruta,
Defendants.

Bankruptcy No. 184–41435–352. Adv.
No. 185–0178–352.

United States Bankruptcy Court,
E.D. New York.

Feb. 2, 1987.

---

Richard S. Yusem, Bridgewater, N.J., for defendants.

Paul I. Krohn, Brooklyn, N.Y., trustee.

Lehnardi & Miller, P.C., Roger K. McCrummen, New York City, for Gerri Nash.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge:

In this adversary proceeding, the Chapter 7 trustee seeks an order directing the defendants to turn over to him 10 shares of its common stock, which represents the debtor's 25% ownership share in the defendant corporation.

## FACTS

The defendant, Omni-Veterinary Supply Co., Inc. (hereinafter referred to as "Omni-Vet") was organized in the State of New Jersey on or about August 20, 1982. One of the debtors in this case, Gerri Nash, agreed to and did invest $25,000 in the corporation in exchange for 10 shares of

Omni-Vet stock. However, the corporate stock was never issued to the debtor.

Ms. Nash began working for the defendant when it began its operations. She currently serves as a vice-president and outside salesperson for Omni-Vet which distributes pharmaceuticals and soft goods to veterinarians. From November 28, 1982 to October 28, 1983, Ms. Nash worked full time for Omni-Vet without receiving any salary. Instead, she agreed to receive a series of loans from Omni-Vet which were made available to her whenever she needed a source of income.

Ms. Nash thereafter received the proceeds of 49 checks. Whenever she received such a check she would sign a promissory note either during that same day or a day or two later to cover the loan she received. All but one promissory note had the marking "Secured by 10 shares of Omni-Vet stock" stamped on its face. When the debtor took each of these loans, she was under the impression that she was giving Omni-Vet a security interest in her 10 shares of stock. She believed her 10 shares of stock served as the collateral which purportedly secured each of the 49 loans received by her. After October of 1983, the debtor began to receive a weekly salary of $500 per week from Omni-Vet and therefore did not need any more loans.

As of March 12, 1986, Ms. Nash had not made any payments in principal on these purported loans; although in the beginning of March, 1984 she began making interest payments at the rate of approximately $25 per week. Ms. Nash testified that at some point in time in the future, she intended to repay the loans in full.

Gerri Nash and her husband, Stanley Nash, filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, District of New Jersey. The case was subsequently transferred to the United States Bankruptcy Court for the Eastern District of New York on September 14, 1984. The Chapter 7 trustee, Paul Krohn, instituted this adversary proceeding on September 24,

1985. On March 12, 1986, the parties in this action appeared for a trial and at the conclusion of the hearing the court took the matter under advisement.

## ISSUES

Two questions must be answered in order to resolve this matter:

1. Under the New Jersey Uniform Commercial Code, can a security interest in stock be created by having the words "Secured by 10 shares of Omni-Vet stock" stamped on the face of a promissory note, without the drafting of a separate agreement describing the security interest taken in the stock?

2. Can such a security interest be created and perfected against unissued stock?

## DISCUSSION

The plaintiff contends that the evidence which was produced at trial shows that the purported loan transactions were a sham because the corporate defendant never really expected the loans to be fully repaid. While this court recognizes that the loan arrangement between Ms. Nash and Omni-Vet was a curious one, there simply was not enough evidence produced at trial to support the plaintiff's contention that the loan transactions were a sham and were in reality compensation for services rendered. Therefore, it is necessary to determine whether the defendant has a security interest in the 10 shares of unissued stock held by the debtor.

The plaintiff argues that a security interest in the 10 shares of stock purportedly held by Ms. Nash was neither created nor perfected since the stock was never issued.

According to the Uniform Commercial Code, as adopted by New Jersey

> ... [a] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and

> ... (b) value has been given; and (c) the debtor has rights in the collateral. N.J. Stat.Ann. 9–203(1) (Supp.1986).

One could make a very strong argument that under UCC 9–203(1)(a) a security interest can be created by merely having the words "Secured by 10 shares of Omni-Vet stock" stamped on a promissory note, without having to have a separate security agreement drafted. However, for such a security interest to be validly created, it is necessary that the collateral be in the possession of the secured party. In this case, since the 10 shares of Omni-Vet stock have never been issued it cannot be said that the shares are in the possession of the secured party.

In addition, UCC 9–203(1)(c) requires that a debtor must have rights in the collateral before a security interest can be said to have attached. While the debtor, Gerri Nash, may have rights to obtain the stock, she can have little if any rights at all in the stock itself until it has been issued. This additional problem leads this court to conclude that the requirements of UCC 9–203(1)(a) and (c) have not been fully met and therefore an enforceable security interest has not been created.

Had this court been able to conclude that a security interest in the Omni-Vet stock had been validly created, the plaintiff would still have prevailed since it has not been shown that this security interest has been properly perfected. UCC 9–304(1) describes perfection of a security interest in stock as follows:

> (1) ... A security interest in money or instruments (other than certified securities or instruments which constitute part of chattel paper) can be perfected only by the secured party's taking possession, except as provided in subsections (4) and (5) of this section and sections (2) and (3) of Section 9–306 on proceeds. (Those subsections are not relevant to the facts in this case). N.J.Stat.Ann. 9–203(1) (Supp. 1986).

In a recent decision the United States Court of Appeals for the Ninth Circuit stat-

ed that "[u]nder the Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is *actual possession* by the secured party, his agent or bailee." *Huffman v. Wikle (In re Staff Mortgage and Inv. Corp.)*, 550 F.2d 1228, 1230 (9th Cir. 1977) [Emphasis supplied]. In light of this requirement, it is difficult to envision how a creditor could perfect a security interest in a mere right to obtain an instrument such as a share of stock when that stock has never actually been issued. Even if this court were to decide that a creditor could perfect a security interest by constructively possessing shares of stock, Omni-Vet would still not have a perfected security interest in Ms. Nash's 10 shares of unissued stock for one cannot have constructive possession of that which is nothing more than an intangible property right. Therefore, the court holds that there was no perfected security interest in the 10 shares of unissued Omni-Vet stock which are the subject of this proceeding.

Judgment will be entered directing the defendant, Omni-Vet, to issue and deliver to the trustee a certificate for the 10 shares of its common capital stock, or, if the assets or business of Omni-Vet have been sold in the interim period of time from March 12 to the date this Decision has been entered, it is directed that Omni-Vet pay over to the trustee his pro rata share of the proceeds of such sale. The Trustee is directed to settle an appropriate judgment.