HEINICKE INSTRUMENTS COMPANY,
a corporation, Plaintiff,

v.

REPUBLIC CORPORATION, a corporation, Defendant-Appellant,

and

Samuel N. Bergman, Defendant-Appellee.

No. 74–1869.

United States Court of Appeals,
Ninth Circuit.

Sept. 13, 1976.

Ferris F. Boothe (argued), of Black, Kendall, Tremaine, Boothe & Higgins, Portland, Or., for defendant-appellant.

R. Ladd Lonnquist (argued), of Pozzi, Wilson & Atchison, Portland, Or., for plaintiff.

Before HUFSTEDLER and WRIGHT, Circuit Judges, and SHARP,* District Judge.

HUFSTEDLER, Circuit Judge.

The contest in this interpleader action is between an attaching creditor and the assignee-pledgee of 28,985 shares of stock. The district court held that the assignee-pledgee had perfected his security interest in the stock before the attachment because, under Oregon Revised Statutes § 79.3050, U.C.C. § 9–305 [1], the issuing corporation was the bailee of the pledgee-assignee. We conclude that the district court misapplied U.C.C. § 9–305. No bailment existed, and the judgment must be reversed.

In March, 1970, Block purchased 28,985 shares of Heinicke Instruments Company ("Heinicke") stock for $249,995.60, to be issued as a part of a private offering of common stock. Block was then president and a director of Heinicke. In May, 1970, Block assigned all of the stock to Bergman as security for Bergman's loan to Block. Bergman instructed Heinicke to forward the securities to him as soon as they were issued. American Stock Exchange's approval of the stock issuance was delayed. As of November 31, 1970, when Block's presidency and directorship of Heinicke was ended, approval had still not been obtained. Meanwhile Bergman assigned the stock to Exchange National Bank of Chicago ("Bank") as collateral security for Bergman's guarantee of the Bank's loan to Block. Heinicke was notified of the second assignment. Heinicke acknowledged both assignments on December 29, 1971, and indicated that it was instructing its transfer agent to issue the stock in Block's name and to deliver the certificate to the Bank when it was issued. Block later repeated those instructions to Heinicke.

Heinicke received Stock Exchange approval of the issuance on January 24, 1972. The stock was issued on January 28, 1972, showing Block as the record owner. On the same date, while Heinicke still had possession of the stock certificate, Republic Corporation ("Republic") served on Heinicke a writ of attachment and notice of garnishment to attach and to garnish any of Block's assets in Heinicke's hands. Republic's attachment and garnishment were obtained in connection with its state court action against Block in Oregon. Heinicke brought this interpleader action in the federal district court on February 4, 1972. It deposited the stock certificate in court and bowed out of the action. Block did not appear. The case was dismissed against the Bank. The parties in interest are Bergman, taking the position of the Bank as guarantor of Block's debt to the Bank and to Bergman, and Republic, as attaching creditor.[2] The district court held that Bergman had perfected his security interest in the stock, under U.C.C. § 9–305,[3] because Heinicke was Bergman's bailee of the stock, and it had received notice of Bergman's security interest.

Section 9–305 requires the secured party, his agent, or the bailee to have actual

---

* Honorable Morell E. Sharp, United States District Judge, Western District of Washington, sitting by designation.

1. We use U.C.C. § 9–305 throughout the Opinion to refer to O.R.S. § 79.3050.

2. Bergman attacked the validity of Republic's pre-judgment writ of attachment and garnishment on both constitutional and statutory grounds. These contentions are not before us because the district court did not reach them.

3. The 1962 version of U.C.C. § 9–305 applicable here, in pertinent part provided:

"A security interest in letters of credit and advices of credit, . . . goods, instruments, money, negotiable documents or chattel paper may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest. A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Article."

The 1972 amendments, even if applicable, would not bear on the problem presented in this case.

possession of the collateral in order to perfect his security interest. The debtor's lack of possession coupled with actual possession by the creditor, the creditor's agent or the bailee serves "to provide notice to prospective third party creditors that the debtor *no longer has unfettered use of* [his] collateral." (*In re Copeland* (D.Del.1975) 391 F.Supp. 134, 151. *See also* 1 G. Gilmore, Security Interests in Personal Property § 142 (1965) p. 440; J. White & R. Summers, Handbook of the Law Under the U.C.C. § 23–10 (1972).) The notice function of U.C.C. § 9–305 would be defeated if the debtor, or a person under the debtor's control, were left in possession of the collateral; therefore, perfection will not occur under those circumstances even if the creditor makes the debtor his agent or his bailee. (Official Comment 2 to U.C.C. § 9–305, 3 U.L.A. 170–71.)

■ The U.C.C. § 9–305 route to perfection was foreclosed until the stock certificate was issued. U.C.C. § 8–102 defining a "security" in terms of the writing which embodies it, together with the definition of "instrument" reifies the stock certificate (1A P. Coogan, W. Hogan & D. Vagts, Secured Transactions under the U.C.C. § 14.01(3) (1963) p. 1503) and treats the certificate as the "security" an interest in which can be perfected by U.C.C. § 9–305 means. Until the certificate was issued, Bergman had only, according to the sparse record before us, an unperfected security interest in a general intangible, as defined by U.C.C. § 9–106. Perfection of a security interest in general intangibles requires filing under U.C.C. § 9–302 for the practical reason that the physical transfer contemplated by U.C.C. § 9–305 cannot occur.

No transfer of possession of the certificate could have happened until the certificate was issued on January 28, 1972, the same date that Republic ran its garnishment-attachment. However, we need no camera to record the winner of the perfection-attachment sweepstakes because the transfer of possession of the certificate contemplated by U.C.C. § 9–305 never took place. Neither Bergman nor the Bank had actual possession of the certificate. The certificate did not change hands. Heinicke never took possession of the certificate on Bergman's or the Bank's account as agent or as bailee. It is highly dubious that Heinicke, as issuer, could act as the agent of anyone, except for the person to whom the stock was issued. Even if it were not disabled as issuer from acting as Bergman's, or the Bank's agent, its relationship was too close to its former president to provide any effective notice to third persons of its agency status. (*Cf. In re North American Builders, Inc.* (D.Neb.1970) 320 F.Supp. 1229 (for purposes of perfecting a security interest in goods manufactured by debtor and assigned to trust, debtor corporation's president could not act as agent of trust and president's possession of goods was insufficient possession by trust to perfect security interest).) The record is barren of any evidence that either the Bank or Bergman ever empowered Heinicke to act as their agent. Such evidence as there is points the other way. For example, Heinicke continued to follow directions from Block after he notified it of his initial assignment.

■ The record is equally barren of any evidence that Heinicke was a bailee for either Block or for the Bank or Bergman. Oregon follows the usual rule that delivery of the thing bailed is an essential feature of the bailment. (Bailment is "a delivery of something . . . by one party to another, to be held according to the purpose or object of the delivery, and to be returned or delivered over when that purpose has been accomplished." *Kantola v. Lovell Auto Co.* (1937) 157 Or. 534, 538, 72 P.2d 61, 62–63. *See also Irish & Swartz Stores v. First National Bank* (1960) 220 Or. 362, 349 P.2d 814; *State v. You* (1890) 20 Or. 215, 218, 25 P. 355, 356.) No delivery to Heinicke occurred. No one asked Heinicke to hold the certificate for any purpose. To the contrary, Heinicke received routine instructions as issuer to issue the certificate in Block's name as purchaser and to deliver the certificate to Block's nominee. No bailment can be implied from these facts. (*E. g., Owen v. Bradley* (1962) 231 Or. 94, 103, 371 P.2d 966, 970.)

Our conclusion that Bergman had no perfected security interest in the certificate rests, not on any technicalities of the law of bailment, but on the meaning of U.C.C. § 9–305. The fleeting possession of the certificate by Heinicke, issuer of the stock, without any change in the actual possession of the stock, bears none of the indicia of visible transfer that the draftsmen of the Code intended to signal Block's creditors that his stock was fettered.

REVERSED.

### Petition for Rehearing

The open reversal is also a remand to the district court to hear and to decide any issues heretofore or hereafter properly presented to the district court which we did not decide. We decline to issue any directions to the district court to perform its ordinary duties.

The petition for rehearing is denied.