## In re WHOLESALE WAREHOUSE, INC., t/a Kustom Kitchens, Debtor.

## The MONEY STORE INVESTMENT CORP., Plaintiff,

v.

## Theodore LISCINSKI, Jr., Trustee in Bankruptcy of the Estate of Wholesale Warehouse, Inc., et al., Defendants.

Bankruptcy No. 89–05531.
Adv. No. 91–3283 SAS.

United States Bankruptcy Court, D. New Jersey.

June 5, 1992.

Bernard Schenkler, Ravin, Sarasohn, Cook, Baumgarten, Fisch & Baime, Roseland, N.J., for plaintiff.

Theodore J. Liscinski, Jr., Lanfrit, Liscinski & Rosenwasser, Somerset, N.J., for defendant Theodore J. Liscinski, Jr.

Carroll D. Lansdell, Office of the U.S. Atty., Newark, N.J., for defendant I.R.S.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

In this adversary proceeding the plaintiff, The Money Store Investment Corp. (hereinafter "MSIC") seeks to compel turnover of a fund held by defendant Theodore J. Liscinski, Jr. (hereinafter "the trustee"). MSIC has moved for summary judgment compelling turnover on the ground that the fund in question is proceeds of a general intangible in which MSIC has a perfected first security interest. The trustee argues that the property in question was a deposit rather than a general intangible, and was not subject to MSIC's lien.

This court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O). For the reasons which follow, the motion is granted. This shall constitute the court's findings of fact and conclusions of law.

### FINDINGS OF FACT

Wholesale Warehouse, Inc., trading as Kustom Kitchens ("Wholesale"), filed a petition on July 14, 1989 for liquidation under chapter 7 of title 11, United States Code ("Bankruptcy Code" or "Code"). Mr. Liscinski was appointed as trustee. Wholesale was a retail appliance dealer. On September 30, 1982, and March 12, 1984 MSIC lent Wholesale $120,000 and $95,000 on two separate notes which were secured by security interests in all of Wholesale's "equipment and machinery, inventory, accounts receivable and general intangibles." *See* Notes and Security Agreements in Plaintiff's Documentary Appendix In Support Of Motion For Summary Judgment, Exhibit B. MSIC perfected both interests by filing UCC–1 financing statements with the Secretary of State of New Jersey.

On August 20, 1986, Wholesale applied for membership in the Appliance Dealers Cooperative ("ADC"). *See* Application For Membership In Appliance Dealers Cooperative in Deposition of Helene R. Siegel, Exhibit D. Subsequently, Wholesale was granted membership, which thereafter allowed it to purchase appliances at a quantity discount from ADC.

On September 5, 1986, Wholesale deposited a sum of $13,000 into an account with ADC. The $13,000 consisted of a $3,000 nonrefundable enrollment fee and a $10,000 credit toward a $50,000 "subscription for capital investment," used to maintain ADC's operating capital.[1] *See* Bylaws of Appliance Dealers Cooperative in Deposition of Helene R. Siegel, Exhibit C, at 2, art. III, ¶ 3(a) and (b). Each new member was required to pay this initial sum and is billed monthly until the full $50,000 is obtained. In return, the members are given the ability to purchase merchandise up to the amount of their subscription credit line, and once the $50,000 limit is achieved, the member is issued a stock certificate. *See* Deposition of Helene R. Siegel, at 11. Wholesale reached its $50,000 mark twice, but never in fact received a stock certificate. *See* Deposition of Helene R. Siegel, at 17–19, 23 and Exhibit 5; Plaintiff's Documentary Appendix In Support, Exhibits D, E and G.

Pursuant to ADC's bylaws, once a member files for bankruptcy, its membership is automatically deemed terminated.[2] The trustee did not contest such termination.[3] The bylaws also maintain that the resigning member is entitled to the return of its investment excluding ADC's right to withhold $5,000 to cover any outstanding debts. *See* Proposed Amendment To Article III in Bylaws of Appliance Dealers Cooperative

in Deposition of Helene R. Siegel, Exhibit C, ¶ 5(a). Thus, as of July 14, 1989, Wholesale's membership in ADC's was automatically deemed terminated.

On September 15, 1989, the trustee filed an adversary complaint with this court to recover Wholesale's $50,000 to the estate pursuant to Code section 542. Subsequently, the trustee and ADC, through settlement, determined that the investment funds would be returned to the estate less the amount ADC was entitled to set off for Wholesale's outstanding debt. On April 4, 1990, ADC and the trustee signed a consent order authorizing the turnover of $32,036.63, the amount remaining after setoff. *See* Consent Order in Defendant's Brief in Objection To Plaintiff's Motion For Summary Judgment. On April 25, 1990, the $32,036.63 amount was turned over to Wholesale's trustee.

On April 29, 1991, MSIC filed this adversary complaint to recover the funds that ADC turned over to Wholesale's trustee. On this motion for summary judgment, MSIC primarily contends that its lien on general intangibles attaches to Wholesale's interest in its capital account with ADC and proceeds thereof. MSIC further asserts that its lien attaches to Wholesale's right to a refund of its investment in ADC because such right is also a general intangible. Alternatively, MSIC argues that Wholesale's interest in ADC constitutes a security deposit and thus is deemed a contract right or account and, therefore, is still subject to its secured lien.

Conversely, Wholesale's trustee maintains that Wholesale's interest in ADC constitutes a money deposit, which is excluded from the UCC § 9–106 definition of a general intangible and, therefore, is not subject to MSIC's lien on general intangibles.

---

1. Article III, paragraph 3 of ADC's bylaws mistakenly provides that the required sum is $30,000.00. However, Helene R. Siegel, executive director of ADC, stated in her deposition that the amount that each member pays as a subscription for a capital investment is $50,000.00, and that the $30,000.00 amount provided in the by-laws is an error. *See* Deposition of Helene R. Siegel, at 10–11.

2. Specifically, ADC's by-laws provide that "[i]n the event of insolvency or bankruptcy of any member ... such member shall be deemed to have resigned...." *See* Proposed Amendment To Article III in By–Laws of Appliance Dealers Cooperative in Deposition of Helene R. Siegel, Exhibit C, ¶ 7.

3. The court therefore expresses no opinion on the enforceability of such a provision where termination is contested.

The trustee further contends that Wholesale's interest constitutes an escrow account which is again not a general intangible subject to MSIC's lien. Finally, the trustee argues that MSIC has failed to prove that Wholesale's interest is comprised of after-acquired property or anything other than unencumbered property of the estate under Code section 541.

Defendant First Fidelity Bank has elected to default in this adversary proceeding. Defendant United States of America Internal Revenue Service agrees with MSIC that Wholesale's interest in its capital account with ADC was a general intangible on which MSIC holds a first lien securing a debt greater than the amount of the fund. The IRS argues further, however, that if MSIC does not have a perfected first lien on the fund, then the IRS does pursuant to its tax lien.

## STANDARDS FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure is rendered applicable to all adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7056. Rule 56(c) mandates that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Specifically, "the judge must ask himself not whether he thinks the evidence unmistakenly favors one side or the other, but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A mere scintilla of evidence in favor of the plaintiff will not alone be sufficient to grant summary judgment. *Id.* Hence, "a court should not act other than with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial." *Id.* at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 204.

The moving party in a motion for summary judgment bears the initial burden of demonstrating that there are no genuine issues of material fact for trial. Fed. R.Civ.P. 56(c). Once the movant has met its initial burden, the burden switches to the nonmoving party to demonstrate with specific evidence that there are genuine issues of material fact for trial. Fed. R.Civ.P. 56(e). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material fact," and thus must do more than set forth mere denials or material issues that do not relate to the issues in question. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Moreover, the court must view any evidence set forth by the movant in the light most favorable to the nonmoving party. *In re Metro Shippers*, 78 B.R. 747, 750 (Bankr.E.D.Pa.1987). Thus, any doubt as to the existence of a genuine issue of material fact will be resolved against the moving party. *Meyer v. Riegel Product's Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983); *In re Lambert*, 122 B.R. 243, 244 (Bankr. E.D.Pa.1990).

## WHOLESALE'S INTEREST IN ADC WAS A GENERAL INTANGIBLE

■ Unless some federal interest requires a different result, property interests are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). ADC was formed under N.J.S.A. 34:17–1 *et seq.*, entitled "Cooperative Societies of Workingmen." Deposition of Helene R. Siegel, Exhibits A and B. The ownership of a cooperative is reflected in the shares of capital stock issued to its members. N.J.S.A. 34:17–9. As previously noted, ADC's bylaws entitled Wholesale to issuance of shares of capital stock reflecting its interest in ADC. It is undisputed, however,

that such shares were never issued, because certain checks of Wholesale to ADC were returned for insufficient funds. Deposition of Helene R. Siegel, at 17, 20.

Perfection of security interests in New Jersey is governed by N.J.S.A. 12A:9–101 *et seq.*, New Jersey's version of Article 9 of the Uniform Commercial Code. A security interest in general intangibles is perfected by filing a financing statement with the Secretary of State. N.J.S.A. 12A:9–302(1) and 12A:9–401(1)(c). " 'General intangibles' means any personal property (including things in action) other than goods, accounts, contract rights, chattel paper, documents and instruments." N.J.S.A. 12A:9–106.

■ A member's interest in its capital account in a cooperative is an equity interest. *In re F.L.F. Farmers Cooperative Ass'n, Inc.,* 170 F.Supp. 497 (D.N.J.1958); *In re Eastern Maine Elec. Co-op., Inc.,* 125 B.R. 329 (Bankr.D.Me.1991); *In re Beck,* 96 B.R. 161 (Bankr.C.D.Ill.1988); *In re Lamar Farmers Exchange,* 76 B.R. 712 (Bankr.W.D.Mo.1987). Unless a stock certificate is issued evidencing a member's interest in a cooperative, such interest is in the nature of a general intangible. *In re Axvig,* 68 B.R. 910, 917 (Bankr.D.N.D. 1987); *In re Beck, supra,* at 163; *In re Shiflett,* 40 B.R. 493, 496 (Bankr.W.D.Va. 1984); *In re Cosner,* 3 B.R. 445, 448 (Bankr.D.Ore.1980). It has similarly been held that where stock certificates reflecting equity interests in corporations have not been issued, such interests are in the nature of general intangibles. *Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700, 702 (9th Cir.1976); *In re Nash,* 70 B.R. 40 (Bankr.E.D.N.Y.1987).

■ The applicable law leads clearly to the conclusion that because a stock certificate was never issued for Wholesale's interest in ADC, that interest was a general intangible which was subject to MSIC's lien. Proceeds were also covered under the security agreement and financing statements, and the fund which the trustee recovered from ADC is proceeds of Wholesale's interest in ADC. MSIC's security interest therein is valid under Code section 552(b).

For these reasons, all arguments to the contrary are without merit, and MSIC's motion for summary judgment is granted. The trustee is to file a motion within fifteen days for compensation under Code section 506(c) for services rendered and expenses incurred in recovering the fund from ADC and preserving it. After that motion is resolved, the balance of the fund shall be turned over to MSIC forthwith.

The attorney for MSIC shall submit an order under Rule 4 of the Local Rules of Bankruptcy Practice.