In re Everett K. WILLIAMS.

U.S.A./FmHA, Plaintiff,

v.

INDI–BEL, INC., and Everett K. Williams, Defendants.

Bankruptcy No. 92–22574.
Adv. No. 93–2086.

United States Bankruptcy Court,
N.D. Mississippi.

Jan. 7, 1994.

Craig M. Geno, Holcomb, Dunbar, Connell, Chaffin & Willard, Jackson, MS, for Everett K. Williams and Indi–Bel, Inc.

Richard Noble, Crosthwait, Terney, Noble & Allain, Indianola, MS, for Indi–Bel, Inc.

Robert Crutcher, Asst. U.S. Atty., Oxford, MS, for U.S.A./FmHA.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

On consideration before the court is the motion for summary judgment filed by the plaintiff, U.S.A./FmHA; response to said motion having been filed by the defendant, Indi–

Bel, Inc.; and the court having considered same, hereby finds as follows, to-wit:

### I.

This court has jurisdiction of the subject matter of and the parties to this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. The parties have agreed that this is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### II.

Summary judgment should only be granted when there are no genuine issues of material fact and one party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party must present its basis for the motion; the non-moving party then has a duty to present enough evidence to indicate the existence of a factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

It is not the function of the court to weigh the evidence and determine its credibility, but to decide whether there is a genuine issue for trial.

The court must, however, determine if the factual issues are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).

### III.

*STATEMENT OF UNCONTRADICTED FACTS*

The debtor, Everett K. Williams, entered into a stock purchase agreement with Delta Catfish Processors, Inc., (Delta), on February 19, 1988. The agreement provided that Delta would sell up to 190 shares of Class A, Series 2 stock to the debtor for $1,000.00 per share. To secure the purchase price, Delta retained a security interest in the stock acquired by the debtor which was perfected by possession. The agreement provided further that after the obligation owed to Delta was paid, the security interest would be released, the stock purchased would be converted to Class A, Series 1 shares, and thereafter issued to the debtor. The agreement prohibited the assignment, conveyance, or transfer of the shares while the security interest was in effect, but this factor is inconsequential to this proceeding.

On September 6, 1991, the debtor executed a promissory note to Indi–Bel, Inc., (Indi–Bel), for $30,000.00. To secure this note, the debtor assigned his subscription to the Delta stock to Indi–Bel. This assignment was expressly acknowledged by Delta.

On August 20, 1992, the debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

On September 25, 1992, Delta issued stock certificate no. 774, representing 99 shares of Class A, Series 1, Delta Pride Catfish, Inc., stock to "Williams Catfish Farm." (All of the parties involved in this proceeding agree that this entity was one and the same as the debtor.) Shortly thereafter, Indi–Bel obtained possession of the stock certificate and claimed a perfected security interest therein.

The stock was later sold free and clear of liens pursuant to an order of this court, dated May 7, 1993. Any liens, as determined by this proceeding, were to attach to the sales proceeds.

The plaintiff, USA/FmHA, (FmHA), contends that the proceeds realized from the stock sale should be considered as property of the debtor's bankruptcy estate, distributable to all creditors in keeping with the priorities set forth in the Bankruptcy Code. To the contrary, the defendant, Indi–Bel, contends that it had a duly perfected security interest in the stock, and that, therefore, the proceeds should first be used to satisfy the balance of its claim, and that, thereafter, the proceeds remaining should be used to pay other claims against the estate, including the unsecured claim of FmHA.

### IV.

*REQUIREMENTS TO PERFECT A SECURITY INTEREST IN A SECURITY*

■ The primary issue for the court to decide is whether or not Indi–Bel has a

properly perfected security interest in the Class A, Series 1 shares of stock issued to the debtor. The court observes that on September 6, 1991, the date that the subscription assignment and promissory note were executed to Indi–Bel, the stock had not been issued. This is a critical factor in this proceeding.

The court first concludes that the stock certificate is a "certificated security" as defined in § 75–8–102, Miss.Code Ann., which reads as follows:

(1) In this chapter unless the context otherwise requires:

(a) A "certificated security" is a share, participation, or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is

(i) represented by an instrument issued in bearer or registered form;

(ii) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and

(iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests, or obligations.

Clearly, the certificate is in registered form. According to the affidavits, coincidentally submitted by Indi-Bel, Delta Pride Catfish stock is commonly recognized in the Mississippi Delta as a medium for investment. On its face, the certificate is one of a class and also a series.

Section 75–8–321, Miss.Code Ann., speaks to the enforcement of a security interest in a security as follows:

(1) A security interest in a security is enforceable and can attach only if it is transferred to the secured party or a person designated by him pursuant to a provision of Section 75–8–313(1).

(2) A secured interest so transferred pursuant to agreement by a transferor who has rights in the security to a transferee who has given value is a perfected secured interest, but a secured interest that has been transferred solely under paragraph (i) of Section 75–8–313(1) becomes unperfected after twenty-one (21) days unless, within that time, the requirements for transfer under any other provision of Section 75–8–313(1) are satisfied.

(3) A security interest in a security is subject to the provisions of Chapter 9, but:

(a) no filing is required to perfect the security interest; and

(b) no written security agreement signed by the debtor is necessary to make the security interest enforceable, except as provided in paragraph (h), (i), or (j) of Section 75–8–313(1). The secured party has the rights and duties provided under Section 75–9–207 to the extent they are applicable, whether or not the security is certificated, and if certificated, whether or not it is in his possession.

(4) Unless otherwise agreed, a secured interest in a security is terminated by transfer to the debtor or a person designated by him pursuant to a provision of Section 75–8–313(1). If a security is thus transferred, the security interest, if not terminated, becomes unperfected unless the security is certificated and is delivered to the debtor for the purpose of ultimate sale or exchange or presentation, collection, renewal, or registration of transfer. In that case, the security interest becomes unperfected after twenty-one (21) days unless, within that time, the security (or securities for which it has been exchanged) is transferred to the secured party or a person designated by him pursuant to a provision of section 75–8–313(1).

Section 75–8–313(1), Miss.Code Ann., describes when a transfer of a security interest in a security occurs. Absent the debtor's filing bankruptcy, the perfection of Indi–Bel's security interest in the subject stock would have occurred when the stock certificate was transferred to Indi–Bel's possession. The bankruptcy filing, however, materially alters this result because of the effects of 11 U.S.C. § 544(a)(1) and (2) and 11 U.S.C. § 549(a)(1). These sections deal respectively with the hypothetical status granted to a trustee or debtor-in-possession upon the filing of a bankruptcy case and the prohibition against a post-petition transfer of estate property.

In *In re Nash,* 70 B.R. 40 (Bankr.E.D.N.Y. 1987), the court held that in order to properly perfect a security interest in shares of stock, a creditor had to have actual possession of the stock certificate. *Nash* went on to state that a security interest in stock could not be perfected by a creditor when the stock had never been issued.

The court in *In re Wholesale Warehouse, Inc.,* 141 B.R. 59 (Bankr.D.N.J.1992), stated the following:

A member's interest in its capital account in a cooperative is an equity interest. *In re F.L.F. Farmers Cooperative Ass'n, Inc.,* 170 F.Supp. 497 (D.N.J.1958); *In re Eastern Maine Elec. Co-op., Inc.,* 125 B.R. 329 (Bankr.D.Me.1991); *In re Beck,* 96 B.R. 161 (Bankr.C.D.Ill.1988); *In re Lamar Farmers Exchange,* 76 B.R. 712 (Bankr.W.D.Mo.1987). Unless a stock certificate is issued evidencing a member's interest in a cooperative, such interest is in the nature of a general intangible. *In re Axvig,* 68 B.R. 910, 917 (Bankr.D.N.D. 1987); *In re Beck, supra,* at 163; *In re Shiflett,* 40 B.R. 493, 496 (Bankr.W.D.Va. 1984); *In re Cosner,* 3 B.R. 445, 448 (Bankr.D.Ore.1980). It has similarly been held that where stock certificates reflecting equity interests in corporations have not been issued, such interests are in the nature of general intangibles. *Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700, 702 (9th Cir.1976); *In re Nash,* 70 B.R. 40 (Bankr.E.D.N.Y.1987).

*Wholesale Warehouse,* 141 B.R. at 63.

*Heinicke Instruments Co. v. Republic Corp.,* 543 F.2d 700 (9th Cir.1976), was another case where a creditor claimed a perfected security interest in stock which had not been issued when the creditor purportedly perfected its security interest. The court stated:

"The UCC § 9–305 route to perfection was foreclosed until the stock certificate was issued. UCC § 8–102 defining a "security" in terms of the writing which embodies it, together with the definition of "instrument" reifies the stock certificate (citation omitted) and treats the certificate as the "security" an interest in which can be perfected by UCC § 9–305 means. Until the certificate was issued, Bergman had only, according to the sparse record before us, an unperfected security interest in a general intangible, as defined by UCC § 9–106. *Perfection of a security interest in general intangibles requires filing under UCC § 9–302 for the practical reason that the physical transfer contemplated by UCC § 9–305 cannot occur."* (emphasis supplied)

*Heinicke,* 543 F.2d at 702.

■ Since the Delta stock certificate was not issued until after the debtor filed bankruptcy and since there was no U.C.C. filing applicable to a general intangible, Indi–Bel did not have a prepetition *perfected* security interest in the stock or the stock subscription. The attempted perfection occurred post-petition. This conclusion comports squarely with the provisions of §§ 75–8–313(1) and 75–8–321, Miss.Code Ann., noted above.

### V.

#### EFFECTS OF BANKRUPTCY LAW

■ Although not addressed by the parties, 11 U.S.C. § 544(a)(1) and (2), were activated by the debtor's bankruptcy filing. Under the circumstances of this proceeding, they convey to the debtor-in-possession the hypothetical status of a judicial lien creditor, as well as, the status of a creditor whose execution against the debtor was returned unsatisfied. These two subsections provide as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial

lien on all property on which a creditor on a simple contract could have obtained such a judicial lien,

whether or not such a creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or

Because of the effect of these subsections, a hypothetical judicial lien and an execution returned unsatisfied were created in favor of the debtor-in-possession.

■ The unsatisfied execution status is not significant in many instances in the State of Mississippi. In this proceeding, however, it adds an extra ingredient because execution is yet another mechanism to obtain perfection of a nonpossessory security interest in or a judicial lien on intangible personal property.

These hypothetical priorities, which exist exclusively because of the Bankruptcy Code, attached to the stock certificate immediately upon issuance, and superseded the unperfected prepetition security interest held by Indi–Bel. The net effect of the activation of these subsections was to capture the stock certificate as an asset of the bankruptcy estate. Once the debtor elected to file Chapter 11, Indi–Bel was placed in an untenable position in its effort to obtain a perfected security interest in the unissued stock.

■ FmHA contends that the transfer of the possession of the stock to Indi–Bel, and the resulting purported perfection of the Indi–Bel security interest in the stock, was a voidable post-petition transfer as contemplated by 11 U.S.C. § 549(a)(1). This section provides as follows:

Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate

(1) [made] that occurs after the commencement of the case;

The court is of the opinion that the aforementioned Code section is also dispositive of this proceeding. Although a security interest was granted by the debtor to Indi–Bel before the bankruptcy case was filed, the perfection of that security interest did not occur until after the case had been filed. As such, the attempted perfection of Indi–Bel's security interest via the transfer of the newly issued Class A, Series 1 stock is a voidable transfer within the ambit of § 549(a)(1).

■ Ironically, one issue that was not raised by Indi–Bel is whether FmHA has standing to bring a cause of action under 11 U.S.C. § 544(a)(1) and (2), or § 549(a)(1). These are avoidance powers ordinarily reserved to a case trustee or the Chapter 11 debtor-in-possession. Only under exceptional circumstances can a creditor resort to these sections for relief. The court is of the opinion that this is such a case. Since this is still a Chapter 11 bankruptcy, there is no case trustee and the debtor is vested with the trustee's powers as a debtor-in-possession. See 11 U.S.C. § 1107(a). However, the debtor has no incentive to bring this cause of action against Indi–Bel. Individually, he is not going to benefit. Regardless of the outcome of this proceeding, the proceeds realized from the sale of the stock are going to be distributed in some fashion to the creditors of the bankruptcy estate, not to the debtor.

■ In most instances, bankruptcy courts require a creditor to obtain permission before initiating a lawsuit seeking to employ the trustee's avoidance powers. See *Unsecured Creditors Committee v. Noyes (In re STN Enterprises)*, 779 F.2d 901 (2nd Cir. 1985). Although permission was not requested in this case, under the existing circumstances, the court would permit FmHA to prosecute this proceeding because of the debtor's lack of incentive to do so.

## VI.

In conclusion, because the attempted perfection of the Indi–Bel security interest occurred after this bankruptcy case was filed, Indi–Bel is only an unsecured creditor of this estate. The proceeds realized from the sale of the stock must be considered an asset of the bankruptcy estate, distributable to all creditors in keeping with the priorities set forth in the Bankruptcy Code.

The motion for summary judgment filed by FmHA is well taken and will be sustained by a separate order of this court.