**In re Johannes Hoekstra BONNEMA Kasey Larue Bonnema, Debtors,**

**Harvey L. MORTON, Trustee, Plaintiff,**

v.

**SANTA ANNA NATIONAL BANK, Defendant.**

Bankruptcy No. 697–60111–7.
Adversary No. 697–6014.

United States Bankruptcy Court,
N.D. Texas,
San Angelo Division.

May 8, 1998.

Scott A. Morelock, Brownwood, TX, for Santa Anna National Bank.

Ronald Mapel, San Angelo, TX, for Debtors.

Harvey L. Morton, Lubbock, TX, Chapter 7 Trustee.

## MEMORANDUM OF OPINION ON CAPITAL RETAINS

JOHN C. AKARD, Bankruptcy Judge.

The issue before the court is whether Associated Milk Producers, Inc. effectively prohibited the assignment of "capital retains" to Santa Anna National Bank, which wanted to use them as collateral to secure a pre-petition loan it made to the Debtors. The court finds that Associated Milk Producers, Inc. prohibited their assignment, and Santa Anna National Bank has no rights in the capital retains.[1]

### Facts

Johannes Hoekstra Bonnema and Kasey Larue Bonnema (Debtors) operated a dairy and utilized Associated Milk Producers, Inc. (AMPI) to process and market the milk produced. AMPI, a cooperative comprised of milk producers and incorporated under Kansas law, processed the milk and sold it to third parties. AMPI paid some of the proceeds to the Debtors and retained a predetermined amount, called "capital retains." AMPI evidenced these retains by issuing "per unit capital retain certificates" to the Debtors. Prior to filing their petition in bankruptcy, the Debtors had accumulated capital retains of $100,000.

On February 24, 1997, within 60 days of the date of the petition, the Debtors presented their per unit capital retain certificates to Santa Anna National Bank (Bank) as collateral for a $100,000 loan to finance the Debtors' operations. On the face of the certificates, a notation reads, "THIS CERTIFICATE IS NON–NEGOTIABLE, NON–TRANSFERABLE AND SUBJECT TO REDEMPTION ONLY ON SUCH BA-

---

1. This court has jurisdiction of this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(E), and b(2)(K).

SIS AS MAY BE DETERMINED BY THE AMPI BYLAWS AND THE BOARD OF DIRECTORS." A note and a security agreement were signed and a financing statement was filed with the Texas Secretary of State which specifically identifies the certificates by number.

Article XI of AMPI's Bylaws stipulates:

Section 4. Capital Retains: The Association may retain from the proceeds received with respect to the sale of products marketed for each member an amount which is fixed without reference to the net earnings of the Association. The amount so retained shall be considered a capital contribution by the member and shall be evidenced by either a qualified or non-qualified per-unit retain certificate which discloses to the recipient the stated dollar amount of the retainage.

Section 5. Restrictions on Transfers and Assignments of Patronage Capital: No assignment or transfer of any qualified or non-qualified per-unit retain certificate, any qualified or non-qualified written notice of allocation, or any book allocation, shall be binding on this Association until the Corporate Board has consented thereto, and until such transfer has been entered on the books of this Association. Consent shall be granted only when such assignment or transfer shall be deemed by the Corporate Board to be in the best interest of the Association, and consent to proposed assignments or transfers can be withheld for any reason whatsoever.

On April 10, 1997, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code in the captioned case. On September 18, 1997 the Trustee, Harvey L. Morton, filed a complaint to determine the validity of the lien held by the Bank on the Debtors' capital retains. In a joint pre-trial order submitted January 5, 1998 the parties stipulated to the following exhibits: Ex. 1, AMPI By-Laws, Article XI; Ex. 2, AMPI per-unit capital retains certificates issued to the Debtors; Ex. 3, various security documents relating to the Bank's loan to the Debtors; and Ex. 4, letter from counsel for AMPI describing the state of incorporation and the corporate identity for AMPI. The parties stipulated to all

facts. The only contested issue is the effectiveness of the restrictions placed on the retains.

**Discussion**

The plaintiff Trustee seeks to avoid the lien and recover the capital retains certificates for the Debtors' estate pursuant to 11 U.S.C. §§ 541(a), 542(a), and 543(b)(1). The Trustee asserts that the capital retains are not assignable to the Bank because the dairy cooperative, AMPI, placed certain restrictions on their assignment. The defendant Bank claims a perfected security interest in the capital retains, in spite of AMPI Bylaws Article XI, Section 5, which requires the consent of the Corporate Board to any assignment and the entry of the assignment on AMPI's books. The Bank offers no evidence showing that Section 5's requirements were met. Instead, the Bank asserts that the capital retains are general intangibles and, as such, cannot be restricted by AMPI. The Bank bases its assertion on Texas Business and Commerce Code 9.318(d), which provides:

A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

Tex.Bus. & Com.Code Ann. § 9.318(d) (Vernon 1991). Before the court analyzes the competing claims, a brief description of agricultural cooperatives and how they operate would be helpful.

Agricultural cooperatives are non-profit organizations which operate for the benefit of member patrons. Cooperatives receive tax advantages because profits are returned to patrons. The Internal Revenue Code calls these profits "patronage dividends." 26 U.S.C.A. § 1388(a) (West Supp.1998) (hereinafter I.R.C.). Patronage dividends are "determined by reference to the net earnings of the organization...." *Id.* § 1388(a)(3). Although cooperatives must return patronage dividends to patrons, there is no mandate to do so immediately in cash. Instead, cooperatives may retain the monies but allocate the

patronage dividends to patrons by recording them on the books. The retainage is used to finance operations.[2] The patronage dividends will eventually be paid to patrons in cash, but often this occurs many years after the dividends have been allocated.

Cooperatives may also finance operations by retaining funds from the sale of patrons' products. Unlike patronage dividends which are determined by reference to the net earnings of the cooperative, these "per-unit retain allocations"[3] are based on the quality and quantity of the products sold. See Terence J. Centner, *Retained Equities of Agricultural Cooperatives and the Federal Securities Acts*, 31 U.KAN.L.REV. 245 (1982). The amount of the per unit retains, also called "capital retains," is fixed, with no possible increase in value. I.R.C. § 1388(f) (West Supp.1998); *In re Barr*, 180 B.R. 156, 158 (Bankr.N.D.Tex.1995); *Nelson v. Cavalier Rural Elec. Co-op. (In re Axvig)*, 68 B.R. 910, 912 (Bankr.D.N.D.1987). A cooperative may also issue a "per-unit retain certificate," defined by the Internal Revenue Code as a "written notice which discloses to the recipient the stated dollar amount of a per-unit retain allocation to him by the organization." I.R.C. § 1388(g) (West Supp.1998).

Texas adopted the Uniform Commercial Code (UCC). Article 9 is codified as Chapter 9 of the Texas Business and Commerce Code. Article 9 applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts." TEX.BUS. & COM.CODE ANN. § 9.102(a)(1) (Vernon Supp.1998). Because the transaction between the Bank and the Debtors was intended to create a security interest in the Debtors' property interest in capital retains, Article 9 applies to this transaction and, consequently, will determine the characterization of the capital retains.

The unique structure of cooperatives makes it difficult to classify patrons' property interests in capital retains. As one court noted, funds retained by cooperatives but allocated to patrons "have characteristics of both shares of stock in a corporation and of corporate obligations...." *Sherman v. Eugene Farmers Cooperative (In re Cosner)*, 3 B.R. 445, 447 (Bankr.D.Or.1980). The *Cosner* court went on to hold, however, that the retained funds were an equity interest rather than a debt interest. *Id.* at 447.

This court faced a similar question and held, as have most courts, that a patron's interest in cooperative retains was an equity interest. *Barr,* 180 B.R. at 159 (citing *In re F.L.F. Farmers Co-op. Ass'n, Inc.,* 170 F.Supp. 497 (D.N.J.1958); *In re Williams,* 167 B.R. 77 (Bankr.N.D.Miss.1994); *Money Store Inv. Corp. v. Liscinski (In re Wholesale Warehouse, Inc.),* 141 B.R. 59 (Bankr. D.N.J.1992); *Taylor v. Assumption Co-op. Grain Co. (In re Beck )*, 96 B.R. 161 (Bankr. C.D.Ill.1988)). Furthermore, AMPI stipulates in its Bylaws that capital retains "shall be considered a capital contribution by the member...." AMPI Bylaws, Article XI, Section 4. Clearly, the Debtors have an equity interest in the capital retains held by AMPI.

Because the Debtors have an equity interest and not a right to the payment of money, most of the categories defined within Article 9 that might properly describe the capital retains can be eliminated immediately. The categories that still appear applicable are "investment property" and "general intangibles."

For capital retains to be classified as "investment property," they must be "a security, whether certificated or uncertificated."[4] TEX.BUS. & COM.CODE ANN. § 9.115(a)(6)(A) (Vernon Supp.1998). The definition of security is found in § 8.102(a)(15) which reads:

"Security," except as otherwise provided in Section 8.103, means an obligation of an

---

**2.** Patronage dividend allocations may be given special tax treatment under §§ 1381–1388 of the Internal Revenue Code. Although the monies are in the hands of the cooperative and not in the hands of the patrons, the patrons must report the patronage dividends as income, while the cooperative is not taxed on the monies. This eliminates the double taxation problem that a corporation and its owners face.

**3.** I.R.C. § 1388(f) (West Supp.1998).

**4.** The other four categories of "investment property" are not applicable here.

issuer or a share, participation, or other interest in an issuer or in property or an enterprise of an issuer:

    (A) that is represented by a security certificate in bearer or registered form, or the transfer of which may be registered on books maintained for that purpose by or on behalf of the issuer;

    (B) that is one of a class or series or by its terms is divisible into a class or series of shares, participations, interests, or obligations; and

    (C) that:

        (i) is, or is of a type, dealt in or traded on securities exchanges or securities markets; or

        (ii) is a medium for investment and by its terms expressly provides that it is a security governed by this chapter.

TEX.BUS. & COM.CODE ANN. § 8.102(a)(15) (Vernon Supp.1998).

Although the capital retains are not "an obligation of an issuer," they are "a share, participation, or other interest in an issuer or in property or an enterprise of an issuer," as required by the first part of the definition. *Id.* However, the retains are not securities because they do not meet the functional test as set out in § 8.102(a)(15)(C)(i) and (ii). Subsection (ii) is not satisfied because the terms of the capital retains do not expressly provide that they are securities governed by Article 8. Subsection (i) is not satisfied because the retains are not, nor are they of a type, dealt in or traded on securities exchanges or securities markets. As the comments to § 8.102(a)(15) note, "The third component, the functional test in sub-paragraph (iii) [for (iii) read (C)], provides flexibility while ensuring that the Article 8 rules do not apply to interests or obligations in circumstances so unconnected with the securities markets that parties are unlikely to have thought of the possibility that Article 8 might apply." Because capital retains do not satisfy this functional test, they are not securities

and consequently are not "investment property."

The retains must fall into the catch-all category of "general intangibles." Most courts, when faced with similar circumstances, have classified the retains the same way. *Barr,* 180 B.R. at 159; *Williams,* 167 B.R. at 81; *Axvig,* 68 B.R. at 917; *Cosner,* 3 B.R. at 448. The present case differs from the cases cited, however, because in those cases certificates were not issued evidencing the retains. Nevertheless, the capital retains remain general intangibles. The mere issuance of certificates does not transform the capital retains from general intangibles to securities because a certificate only makes the interest "certificated." The requirements set out in the functional aspect of the definition of "security" still are not met for the capital retains, even after certificates have been issued.[5]

■ The court next turns to the effectiveness of the restrictions placed on the capital retains. AMPI's Bylaws, along with a notation on the face of each retain certificate, place restrictions on the transferability and assignability of the capital retains. The Bank argues that because the capital retains are "general intangibles" § 9.318(d) applies, making the restrictions ineffective. As stated previously, Texas Business and Commerce Code § 9.318(d) reads:

    A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account or prohibits creation of a security interest in a general intangible for money due or to become due or requires the account debtor's consent to such assignment or security interest.

TEX.BUS. & COM.CODE ANN. § 9.318(d) (Vernon 1991).

The statute is made applicable to "a term in any contract between an account debtor and an assignor." "Account debtor" is defined as "the person who is obligated on an account, chattel paper or general intangible."

---

5. If the capital retains were to be classified as securities after certificates had been issued, then the retains would have to have been classified as securities, not general intangibles, before the issuance of certificates. The issuance of certifi-

cates would have only changed the interest from uncertificated to certificated securities, while the interest would have remained "investment property."

TEX.BUS. & COM.CODE ANN. § 9.105(a)(1) (Vernon Supp.1998). The problem with the Bank's reading of § 9.318(d) is that AMPI is not an "account debtor" within the meaning of the statute. As previously discussed, AMPI is not indebted or obligated to the Debtors; rather, the Debtors have an equity interest in the capital retains held by AMPI. Because AMPI is not an "account debtor," the court finds that § 9.318(d) is inapplicable and, thus, does not prevent AMPI from placing restrictions on the capital retains.

■ A cooperative is an organization that derives its powers from state law. AMPI is a cooperative incorporated under Kansas law. KAN.STAT.ANN. §§ 17–1601 to –1643 (1995). In the section entitled "Bylaws" of the Kansas Cooperative Marketing Act, the statute specifically permits cooperatives to regulate "the manner of assignment and transfer of the interest of members ..." and "the manner in which the remainder of the association's profits shall be prorated in the form of patronage allocations to the association's ... members upon such member's ... sales to, the association...." KAN.STAT.ANN. § 17–1609(i), (j) (1995). It seems clear that AMPI is free to place restrictions on the capital retains.

AMPI has, in fact, placed restrictions on the capital retains in its bylaws. For capital retains to be assigned or transferred, AMPI's Corporate Board must consent to such assignment or transfer, and the transfer or assignment must be entered on AMPI's books. Because no assignment of the capital retains has been entered on AMPI's books and the Corporate Board has not consented to such an assignment, the assignment of the capital retains to the Bank has been effectively prohibited.

### Conclusion

For the reasons stated above, the court finds that AMPI has effectively prohibited the assignment of the capital retains to the Bank. The Bank will be ordered to turn over the certificates to the Trustee for further administration of the Debtors' estate.

JUDGMENT ACCORDINGLY.[6]

---

**6.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED R.BANKR.P. 9014. This Memorandum will be published.